[Civ. No. 46642. First Dist., Div. One. May 30, 1979.]

BOARD OF EDUCATION OF THE PALO ALTO UNIFIED
SCHOOL DISTRICT et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
MARGARET W. HEBARD et al., Real Parties in Interest.

**COUNSEL**

Pillsbury, Madison & Sutro, Noble K. Gregory, C. Douglas Floyd, William O. Fisher, Breon, Galgani & Godino, Margaret E. O'Donnell, Martha B. Scott and Keith V. Breon for Petitioners.

Thomas M. Griffin and Christina L. Dyer as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Davis, Cowell & Bowe, Alan C. Davis, Frederick C. Roesti, Peter J. Giamalis and John Schipper for Real Parties in Interest.

**OPINION**

**ELKINGTON, J.**—Because of a drastic reduction in funding brought about principally by the passage of last year's Proposition 13, and the statutory requirement of a balanced budget (see Ed. Code, § 14050 et seq.), the Board of Education (Board) of the Palo Alto Unified School District (District) voted unanimously by resolution to close one of the District's high schools. Without unanimity the Board then voted, three to two, to close Cubberley High School.

A group of the District's electors and "The Take Time to Plan Committee" (here real parties in interest) processed a referendum petition calling for the Board "to rescind the [Cubberley High School closing] action taken on February 6, 1979, or to submit the Cubberley High School closing question to the electors of the . . . District. . . ." The Board, on advice of counsel declined to do either, whereupon real parties in interest sought mandate and injunctive relief in the superior court.

Following a hearing the superior court ordered that: "A Writ of Mandate issue from this Court commanding respondents to file the referendum petition and process it in accordance with the provisions of section 5200 of the Elections Code of the State of California."

On application of the Board, its members, and its chief executive officer, we stayed further proceedings in the superior court, and then issued an alternative writ of mandate for the purpose of determining the validity of that court's order.

■ Real parties in interest contend (as the superior court held) that resolutions of a school district are subject to the right of referendum in the electors of the district. The contention is of first impression; never in the 68-year history of the state's "initiative and referendum" provisions, does such an argument appear to have been made, or resolved.

We have concluded for the reasons which we now state, that the contention of real parties in interest and the related order of the superior court were, and are, invalid.

California's Constitution, article IX, section 5, mandates:

*"The Legislature shall provide for a system of common schools. . . ."* (Italics added.)

The state Constitution, article IX, section 14, has further ordained:

"The Legislature shall have power, by general law, to provide for the incorporation and organization of school districts, high school districts, and community college districts, of every kind and class, and may classify such districts.

"The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

The Legislature has accordingly provided "for a system of common schools. . . ." It has enacted a detailed and comprehensive Education Code covering, inter alia, the organization, duties, and powers, of school districts and of their governing boards. Subject, arguendo, to referendum

those powers, beyond any doubt, conferred upon the Board the discretion to order the closing of Cubberley High School.

The state's high court has considered the nature and function of school districts and their governing boards.

*Hall* v. *City of Taft,* 47 Cal.2d 177 [302 P.2d 574]. "The public schools of this state are a matter of statewide rather than local or municipal concern; their establishment, regulation and operation are covered by the Constitution and the state Legislature is given comprehensive powers in relation thereto." (P. 179.) "In harmony with those provisions it has been held that the power of the state Legislature over the public schools is plenary, subject only to any constitutional restrictions. . . . The public school system is of statewide supervision and concern and legislative enactments thereon control over attempted regulation by local government units. . . . 'It [the education of the children of the state] is in a sense exclusively the function of the state which cannot be delegated to any other agency. The education of the children of the state is an obligation which the state took over to itself by the adoption of the Constitution. To accomplish the purposes therein expressed the people must keep under their exclusive control, through their representatives, the education of those whom it permits to take part in directing the affairs of state.' *School districts are agencies of the state for the local operation of the state school system.*" (Pp. 180-181, italics added, and see authority there collected; see also *San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 951-952 [92 Cal.Rptr. 309, 479 P.2d 669], "Education . . . is plainly a state function"; *Lerner* v. *Los Angeles City Board of Education,* 59 Cal.2d 382, 398-399 [29 Cal.Rptr. 657, 380 P.2d 97]; *Town of Atherton* v. *Superior Court,* 159 Cal.App.2d 417, 421 [324 P.2d 328].)

From the foregoing discussion it becomes manifest that school districts are *administrative agencies* of the state for the local operation of the state school system.

It is firmly held that the acts and resolutions of administrative agencies of the state are not subject to referendum by local electors.

Where such acts or resolutions are "administrative in nature, the superior court has no jurisdiction to entertain an action for the purpose of requiring submission of that resolution to a referendum vote." (*Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 557 [219 P.2d 457].) " ' "If the subject is one of statewide concern in which the Legislature has delegated

decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, hence is outside the scope of the initiative and referendum." ' " (*Friends of Mount Diablo* v. *County of Contra Costa,* 72 Cal.App.3d 1006, 1011 [139 Cal.Rptr. 469]; *Hughes* v. *City of Lincoln,* 232 Cal.App.2d 741, 745 [43 Cal.Rptr. 306].)

More recently the high court found "the use of the initiative and referendum [to be barred] in a situation in which the state's system of regulation over a matter of statewide concern is so pervasive as to convert the local legislative body into an administrative agent of the state." (*Associated Home Builders etc., Inc.* v. *City of Livermore,* 18 Cal.3d 582, 596, fn. 14 [135 Cal.Rptr. 41, 557 P.2d 473].)

We also observe no constitutional authority for application of the referendum to an act or resolution of a school district's governing board.

The state's Constitution, article II, section 9, and article IV, section 1, establishes the referendum procedure in respect of acts of the Legislature. In such cases the vote is cast by electors of the *entire state.* Article II, section 11, provides that: "Initiative and referendum powers may be exercised by the electors of each *city* or *county.* . . ." (Italics added.) Nowhere in the Constitution are those powers otherwise extended to the acts or resolutions of other public entities, or agencies, or *districts.*

▮ Nor is *statutory* authority for exercise of the referendum on acts or resolutions of a school district to be found.

Elections Code section 5200 (relied upon, as noted, by the superior court), as relevant, provides generally that the "voters of any district . . . *to which Section 5150 of this code applies,* shall have the right to petition for referendum on *legislative* acts of such district. . . ." (Italics added.) (We here accept, *but arguendo only,* real parties in interest's contention that the Board's high school closure was a "legislative act.") Section 5150 by its terms *does not apply* "to a district formed under a law which does not provide for action by ordinance, . . ."* School districts are formed

---

*Illustrations of laws providing for a district's "action by ordinance" follow: Harbors and Navigation Code sections 5900 (harbor improvement dist.), 6070 (harbor dist.) and 6860 (river port dist.); Public Utilities Code section 11909 (mun. utility dist.); Streets and Highways Code section 27147 (bridge and highway dist.); Water Code sections 31141 (county water dist.) and 71276 (mun. water dist.); Health and Safety Code section 13869 (fire protection dist.)

under the Education Code which nowhere provides that such districts shall, or may, act by ordinance. (Real parties in interest concede that the instant "school closing resolution is obviously not an ordinance.")

It was said in *People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 503, footnote 24 [96 Cal.Rptr. 553, 487 P.2d 1193], that "the *referendum* . . . provisions for districts [under § 5200] do not apply [to the excepted districts of § 5150] since the applicability of section 5150 is a *sine qua non* of the applicability of [§] 5200. . . ." Thus the Elections Code expressly provides that the acts and resolutions of school districts are *not* subject to referendum.

The conclusions we reach are supported by the rationale expressed, in a reasonably analogous context, by *Simpson* v. *Hite,* 36 Cal.2d 125, 133-134 [222 P.2d 225]:

" 'It has been recognized from an early date in the history of the state that in the exercise of their functions under particular statutes "the board of supervisors is a special tribunal, with mixed powers—administrative, legislative and judicial" . . .' Where a series of acts by a board are all directed to the end of carrying out a duty imposed on the board by the law of the state, and where it is sought by a citizens' committee of the county to interrupt the process through repeal by the initiative of one or more of the steps theretofore taken by the board, the acts sought to be repealed are to be judged, as legislative or administrative, not as isolated acts but in their true relationship as a part of the entire project.

"If the selection of sites of courts buildings were subject to referendum, the electors could nullify every determination of the board of supervisors to erect buildings for the courts and thereby nullify the legislative policy and prevent execution of the duty imposed upon the board of supervisors. Furthermore, a small group, or various small groups, of electors, by repeated initiative proposals for a change of site, could interfere with the supervisors' attempts to furnish quarters for the courts at any time, even when the period for referendum had passed. Thus, such small group or groups of electors could not merely place the board of supervisors in a strait jacket . . . but could interfere with the functioning of the courts by depriving them of the quarters which the supervisors were bound to, and in good faith sought to, furnish. This application of the initiative would be 'inappropriate and impossible of operation' and would repeal 'provisions of . . . state law vesting administrative and discretionary powers in the Board of Supervisors'. . . . [T]he initiative method cannot be

employed where compliance with the requirements of the general law calls for the exercise of the mixed administrative, legislative and judicial powers of the local legislative body and its various functions are so intermingled as to render the initiative entirely inconsistent and unworkable. . . . The initiative or referendum is not applicable where 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential. . . .' " (And see authority there collected.)

■  In the case at bench the Board was under statutory compulsion to operate its school system under a reduced and *balanced budget.* To do so it was obliged to accommodate its expenses to anticipated lesser funding. Closure of Cubberley High School would result, after the first year, in an annual saving of about $850,000, and would entail reassignment of students and faculty to the District's two remaining high schools. Without the criticized closure the saving would *necessarily* have to be made elsewhere, perhaps by larger classes, or increased termination of teachers, or other undesirable reduction in the quality of Palo Alto's educational facilities. The state's Constitution and Legislature have provided, and its appellate courts have held, that such hard decisions shall be made objectively by a school district's responsible, elected, governing body acting as an administrative agency of the state, and not be subjected to the inevitable delays, interference, and frustration decried by *Simpson* v. *Hite.*

Cubberley High School's closing was undoubtedly as unpleasant a decision for the Board, as its affirmation is now, for us.

It seems proper at this point to observe that when and if a majority of the electors of a school district entertain a wish to remove any or all of the district's elective officers, i.e., its governing board, they are not without a remedy; the *recall procedure* is expressly made applicable. (Cal. Const., art. II, § 19; Elec. Code, § 27000 et seq.)

We have found it unnecessary to determine whether a school district's governing body, in addition to being an administrative agency of the state is also a legislative body, or its resolutions, legislative acts.

We observe nothing in *Los Altos Property Owners Assn.* v. *Hutcheon,* 69 Cal.App.3d 22, [137 Cal.Rptr. 775], dealing with Code of Civil Procedure section 526a actions against public officers for illegal expenditures or waste of public property, of aid to real parties in interest. And we find the

several remaining incidental points and arguments of real parties in interest irrelevant to the conclusion we have reached, or otherwise to be without merit.

The peremptory writ of mandate will issue.

Racanelli, P. J., and Newsom, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied July 25, 1979.