786 P.2d 994

**Mario COTA–ROBLES, Patrick McDonald, Michael Haggerty, and George Gault, Plaintiffs/Appellants,**

**v.**

**MAYOR AND COUNCIL OF the CITY OF TUCSON and The City of Tucson, a municipal corporation, Defendants/Appellees,**

**State of Arizona, ex rel. Charles L. Miller, Director, Department of Transportation; Donald H. Laidlaw; Donald G. Shropshire; Donald F. Fornear; Bruce E. Dusenberry; Humberto S. Lopez; W.D. Breck, Sr.; G. Richard Ketchum; and William M. Clements, Intervenors/Appellees.**

**No. 2 CA–CV 89–0059.**

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 26, 1989.

Review Denied Feb. 26, 1990.*

Law Office of John S. O'Dowd by John S. O'Dowd and Southern Arizona Legal Aid, Inc. by William E. Morris, Tucson, for plaintiffs/appellants.

Harrison, Rollman & Gabroy, P.C. by John Gabroy and Frederick S. Dean, Tucson City Atty. by Bradford C. Detrick, Tucson, for defendants/appellees.

Robert K. Corbin, Atty. Gen. by G.A. Turner, Phoenix, for intervenor/appellee State of Ariz.

Molloy, Jones & Donahue, P.C. by D. Michael Mandig and David A. McEvoy, Tucson, for intervenors/appellees Laidlaw, Shropshire, Fornear, Dusenberry, Lopez, Breck, Ketchum and Clements.

---

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

OPINION

FERNANDEZ, Chief Judge.

Appellants Mario Cota–Robles, Patrick McDonald, Michael Haggerty and George Gault, voters and concerned citizens in Tucson, appeal from the summary judgments entered against them in their suit seeking to compel the Mayor and Council of the City of Tucson to call a referendum election on the alignment of the proposed Aviation Parkway. We affirm.

In February 1981, the Pima Association of Governments, a non-profit corporation comprised of the governments of Pima County, the City of Tucson, the City of South Tucson, the Town of Marana and the Town of Oro Valley, adopted a regional transportation plan that included the Aviation Parkway, a controlled-access highway designed to run from Alvernon Way near Golf Links Road through downtown to Granada Avenue near Interstate Highway 10. The proposed parkway route falls both within and without the Tucson city limits, primarily within. In May 1981 the proposed route was designated as State Route 210 by the Arizona Transportation Board.

Engineering consultants were hired and numerous public hearings were held. A concept location study was produced that resulted in four potential corridor alignments. In December 1982 the Tucson City Council selected one of the four alternatives. That alternate was adopted by the transportation board on February 18, 1983, which made the parkway eligible for highway user revenue funds pursuant to A.R.S. § 28–1598(K).

The City of Tucson and the Arizona Department of Transportation (ADOT) entered into an intergovernmental agreement in April 1983 pursuant to which the state agreed to reimburse the city for the cost of the engineering consultants and city personnel time expended in the second phase of the project, the concept design phase. In November 1983, the transportation board approved the advance acquisition by ADOT of right-of-way for the parkway. In June 1985, the Tucson City Council approved the concept design report for the parkway that included 53 measures designed to mitigate the impact of the roadway upon the areas through which it will pass.

In December 1985, ADOT entered into a consulting contract with Parsons Brinckerhoff Quade & Douglas, Inc. to complete the final design and implementation phase of the parkway. In September and October 1987, ADOT entered into four contracts for engineering services and real property appraisal, acquisition and relocation services in connection with the parkway. In November 1987, the City of Tucson and ADOT entered into an intergovernmental agreement pursuant to which ADOT agreed to construct a bicycle path along the parkway corridor in exchange for conveyance of title to city-owned property required for the parkway right-of-way. On April 11, 1988, the City Council reaffirmed its June 1985 vote on alignment of the parkway.

On July 15, 1988, the transportation board established a portion of the Aviation Parkway as a state highway because that portion was then ready for construction. As of September 12, 1988, the date the affidavit of the director of ADOT was signed, ADOT had expended $56.3 million for Aviation Parkway engineering and design services and right-of-way acquisition. Eight contracts between ADOT and engineering, architectural and utility design firms totalling at least $24 million were then being performed.

Appellants filed their complaint against the Mayor and Council and the City of Tucson on July 13, 1988. They seek an order requiring the City Council to hold a referendum election on the proposed alignment of the Aviation Parkway. Appellants contend the referendum is required by the Neighborhood Protection Amendment, an amendment to the Tucson City Charter adopted by the voters as an initiative that became effective February 21, 1986. Tucson Charter, Ch. XXV, § 13. The amendment reads as follows:

(a) The purpose of this section is to allow maximum citizen participation with respect to controlled-access highway design, placement and construction in order

to protect existing neighborhoods as desired by the electorate.

(b) The City of Tucson shall not participate, as described herein, in the construction of any freeway, parkway or other controlled-access highway as defined by Arizona Revised Statutes section 28–602, or grade-separated interchange before the qualified electors of Tucson first vote to approve the location and preliminary design of such proposed project. Any freeway, parkway or other controlled-access highway or grade-separated interchange will be referred to as 'project' throughout this section.

(c) For purposes of this section, participation by the City of Tucson in any project shall include approval or authorization of expenditure of funds for condemnation, right-of-way acquisition or construction of any project, or approval or concurrence in any approval of such project, or cooperation with any other governmental authority thereon, except as provided in paragraph (g) of this section.

(d) Voter approval for participation by the City of Tucson in any project shall be obtained by the mayor and council at any regular election or special election called for that purpose. The design and proposed route of the project shall be described in such detail on the ballot that a reasonable person could understand the specific location, estimated cost and design of the proposed project, including whether the proposed project could reasonably be described as either a freeway, parkway or other controlled-access highway or a grade-separated interchange. The voters shall be asked on the ballot to 'approve' or 'reject' the proposed project.

(e) If the voters reject the proposed project, the mayor and council shall request that the state department of transportation not include the proposed project in the state highway system.

(f) Approvals of any project granted pursuant to this section shall be effective for five (5) years and, if no actual construction has commenced within that period, shall lapse, subject to new voter approval pursuant to this section.

(g) This section shall not apply to improvements to the existing federal Interstate system, nor to cooperation with other governmental authorities in purely planning and research activities, nor to obtaining sufficient information required to comply with paragraph (d) of this section. This section shall not apply to projects for which construction contracts have been let as of the effective date of this section, except for any proposed grade-separated interchanges connected with those projects, in which event this section shall apply.

Both the state and a group of individual voters who are proponents of the parkway moved to intervene in the lawsuit. The city, state and individual intervenors each filed a motion for summary judgment, and appellants responded with a summary judgment motion of their own.

The trial court granted appellees' motions, finding that the Neighborhood Protection Amendment is unconstitutional as applied to this case because it requires referendum elections without meeting the constitutional provisions on referendums. We believe the more appropriate approach to the issues in this case must begin with an examination of the question of whether the voters of the City of Tucson can hold a referendum election on a proposed controlled-access highway in which there is extensive state involvement. Therefore, we affirm on a different basis than the trial court's ruling. *Gibson v. Boyle*, 139 Ariz. 512, 679 P.2d 535 (App.1983).

## STATE PREEMPTION

The Arizona Constitution provision on initiative and referendum powers of city voters reads in part as follows:

> The powers of the Initiative and the Referendum are hereby further reserved to the qualified electors of every incorporated city, town, and county *as to all local, city, town, or county matters* on which such incorporated cities, towns, and counties are or shall be empowered by general laws to legislate.

Ariz. Const. art. IV, pt. 1, § 1(8) (emphasis added). The constitution also provides that a city may adopt a charter "for its own government...." Ariz. Const. art. XIII, § 2. That provision "is not an enabling act conferring carte blanche authority or plenary power to adopt any legislation that it might desire. There is a restriction that any charter provisions adopted must be 'consistent with, and subject to, the constitution and the laws of the state'." *Strode v. Sullivan,* 72 Ariz. 360, 364, 236 P.2d 48, 51 (1951), *quoting* Ariz. Const. art. XIII, § 2.

A determination of whether the state has preempted a city from legislating in a certain area requires consideration of two questions: 1) whether the subject matter is one of statewide concern, and 2) whether the state legislation has appropriated the field. *State v. Mercurio,* 153 Ariz. 336, 736 P.2d 819 (App.1987).

Our Supreme Court has said that both a city and state may legislate on the same subject when that subject is of local concern or when, though the subject is not of local concern, the charter or particular state legislation confers on the city express power to legislate thereon; but where the subject is of statewide concern, and the legislature has appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid.

*Phoenix Respirator & Ambulance Service v. McWilliams,* 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970).

A.R.S. § 28-104 vests *"exclusive* control and jurisdiction" over state highways and state routes in the department of transportation. (Emphasis added.) " 'State route' means a right-of-way, whether actually used as a highway or not, designated by the transportation board as a location for the construction of a state highway." A.R.S. § 28-1801(9). The transportation board is authorized to establish a complete system of highway routes to determine which state routes shall be accepted into the state highway system and which state routes shall be improved and to establish, open, relocate, alter, vacate or abandon any state route or highway. A.R.S. § 28-106(B). The director of ADOT is empowered to "[d]irect the preparation of all plans and specifications for work on state highways or state routes," to "[a]dvertise for competitive bids for work on state highways or state routes ... and enter into contracts for the work," and to "[d]irect supervision of all construction work on state highways and state routes...." A.R.S. § 28-1803(A)(1), (2), (3).

A major source of funding for the parkway is the highway user revenue fund. That fund receives revenue from such sources as motor vehicle title and license fees, driver's license fees, auto dealers license fees, motor vehicle fuel taxes, motor carrier taxes, commercial fleet registration fees, highway use taxes, fines for violation of state traffic laws, the sale of abandoned vehicles and the state lottery fund. A.R.S. § 28-1598(A). Clearly, the statutes cited indicate that the alignment and construction of a controlled-access highway that lies both inside and outside a city and that is to be funded by state highway revenue user funds is a subject matter of statewide concern and that state legislation has appropriated the field. *See Committee of Seven Thousand v. Superior Court,* 45 Cal.3d 491, 247 Cal.Rptr. 362, 754 P.2d 708 (1988).

The transportation board established the Aviation Parkway as State Route 210 in May 1981. The alignment of the parkway was approved by the board in February 1983. Both actions occurred long before the Neighborhood Protection Amendment became effective in February 1986. There is no contention that proper procedures were not followed when those actions were taken. Once the parkway was established as a state route, the City of Tucson lost authority to legislate on the matter, and the voters of Tucson lost authority to seek a referendum election on it. In essence, the Neighborhood Protection Amendment acknowledges that fact. If a proposed project is rejected by the voters, the amendment provides only that the mayor and council "shall request that the state department of transportation not include the proposed project in the state highway

system." Tucson Charter Ch. XXV, § 13(e). There is nothing, of course, that would *require* ADOT to honor any such request.

We conclude that appellants' attempt to apply the Neighborhood Protection Amendment so as to require the Tucson City Council to hold a referendum election on the Aviation Parkway would result in an "irreconcilable conflict" with our constitution. *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 207, 439 P.2d 290, 293 (1968). Because of that conclusion, we need not address either the trial court's finding or the other issues raised by the parties.

The dismissal of appellants' complaint is affirmed.

LIVERMORE, P.J., and
LACAGNINA, J., concur.