937 P.2d 682

**Ernest HANCOCK, Petitioner–Appellant,**

v.

**Fran McCARROLL, in her capacity as Clerk of the Maricopa County Board of Supervisors, Clerk of the Maricopa County Stadium District, Respondent–Appellee.**

1 CA–CV 96–0104.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 24, 1996.

Reconsideration Denied Feb. 14, 1997.

Review Denied June 5, 1997.*

---

* Feldman, J., recused himself and did not participate in the determination of this matter.

Ernest Hancock, Phoenix, in Pro. Per.

Newmark Irvine, P.A., Phoenix by Thomas K. Irvine and Richard Romley, Maricopa County Attorney, Phoenix by Jessica Gifford Funkhouser, Shawn H. Nau, for Appellee.

## OPINION

### CHRISTOPHER M. SKELLY, Judge.[1]

Appellant Ernest Hancock applied for initiative petition serial numbers for initiatives which would repeal a county resolution that created a stadium district, and repeal the stadium district's levy of a transaction privilege tax. When the clerk of the county board of supervisors and stadium district refused to issue the requested petition numbers, Hancock filed special actions in superior court seeking orders directing her to do so. The superior court dismissed the consolidated special actions. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1990, the Arizona Legislature promulgated Ariz.Rev.Stat.Ann. ("A.R.S.") section 48–4202, which permits boards of supervisors of counties having a population of more than 1,500,000 or in which a major league baseball spring training operation is located to organize a county stadium district. 1990 Ariz. Sess. Laws 2076, 2077. The county board of supervisors is the board of directors for any such district. A.R.S. § 48–4202(B) (Supp. 1996).

On September 25, 1991, the Maricopa County Board of Supervisors ("the County Board") created the Maricopa County Stadium District ("the District"). On February 17, 1994, the board of directors of the District ("the District Board") levied a sales tax to fund the building of a major league baseball stadium in Phoenix. *See* A.R.S. § 48–4233 (Supp.1996) (authorizing stadium district board of directors to levy transaction privilege tax).

On March 27, 1995, Hancock presented two applications for initiative petition serial numbers to appellee Fran McCarroll, the clerk of the County Board and of the District Board.[2] In one application, he represented that he intended to circulate and file an initiative petition to repeal the County Board's resolution that created the District. In the other, he stated that the intended initiative would repeal the District Board's levy of the transaction privilege tax.

McCarroll refused to accept either application. She did so on the advice of counsel that there is no constitutional initiative right reserved to citizens of a stadium district, and the initiative process could not be used to repeal the establishment of the District because the County Board had no authority to dissolve the District.

Hancock filed two special action petitions in the superior court—one against McCarroll in her capacity as clerk of the County Board (CV 95–05100) and the other in her capacity as clerk of the District Board (CV 95–05004). McCarroll moved to consolidate the cases. She also filed motions to dismiss, for judgment on the pleadings or for summary judgment, in both actions. Hancock opposed consolidation. In response to the motions he argued that, under art. IV, pt. 1, section 1(8) of the Arizona Constitution, the power of initiative is reserved to qualified electors of the county as to all county matters on which the county is empowered by general laws to legislate; because the County Board created the District, it had the power to repeal the creation of the District. He also argued that tax levying public improvement districts are municipalities and qualified electors of municipalities have the power of initiative under the same constitutional provision.

The trial court consolidated the two actions, finding that the facts were identical and there was sufficient commonality of the questions of law to warrant consolidation. It

---

1. The Honorable Christopher M. Skelly, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

2. Pursuant to A.R.S. sections 19–111(A) (Supp. 1996) and 19–141(A) (Supp.1996), a person intending to propose a county measure by initiative petition shall, before the printing and circulating of the petition, file with the clerk of the board of supervisors an application setting forth specified information. On receipt of the application, the clerk assigns an official serial number to the petition. A.R.S. § 19–111(B) (Supp.1996).

granted McCarroll's motions and dismissed the consolidated action, explaining that the Arizona Constitution did not extend the power of initiative to citizens of districts like the stadium district. The trial court did not specifically address in its order whether the right of initiative was available to repeal the County Board's resolution that created the District.

Hancock filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994). We affirm dismissal of both actions.

## DISCUSSION

Three issues are presented in this appeal: (1) Did the trial court abuse its discretion in consolidating the two actions? (2) Do citizens of a stadium district have the right of initiative? (3) Is initiative available to repeal the establishment of a stadium district created by a county board of supervisors?

### A. Consolidation

 Hancock argues that the trial court abused its discretion in consolidating his two actions because they were taken against two separate political entities and the cases presented different issues. We disagree.

Rule 42(a), Arizona Rules of Civil Procedure, provides that:

When actions involving a common question of law or fact are pending before the court, it may order . . . all the actions consolidated, and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Cases may be consolidated in the trial court's discretion, and we will not disturb such an order unless the court abused its discretion. *See Daley v. Earven,* 166 Ariz. 461, 464, 803 P.2d 454, 457 (App.1990); *Matter of Appeal in Pima County Severance Action No. S–2248,* 159 Ariz. 302, 305, 767 P.2d 25, 28 (App.1988).

The two actions consolidated by the court arose out of related facts. The parties are the same in both cases, although McCarroll is sued in her capacity as clerk of the County Board in one case and as clerk of the District Board in the other. Even though the issues in the cases are different, they both concern the availability of the initiative process. Furthermore, even a single case may include a number of separate claims and legal issues arising out of the same facts. Therefore, we conclude that the trial court did not abuse its discretion in consolidating the two actions.

### B. Do Citizens of a Stadium District Have the Right of Initiative?

 Hancock focuses our attention on two provisions of the Arizona Constitution to support his argument that the Constitution reserves the right of initiative to citizens of a stadium district. One provision, art. 13, section 7, reads:

Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and *tax levying public improvement districts,* now or hereafter organized pursuant to law, shall be political subdivisions of the State, *and vested with* all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this Constitution or any law of the State or of the United States. . . .

(Emphasis added). The other provision, art. 4, pt. 1, section 1(8), reads in part:

The powers of the Initiative and the Referendum are hereby further reserved to the qualified electors of every incorporated city, town, and county as to all local, city, town, or county matters on which such incorporated cities, towns, and counties are or shall be empowered by general laws to legislate.

Based on these constitutional provisions and on art. 13, section 1, which describes cities and towns as "municipal corporations," Hancock argues that the language of art. 4, pt. 1, section 1(8) encompasses all municipal corporations, which includes tax levying public improvement districts such as a stadium district. In other words, asserts Hancock, the District must be deemed a municipality and subject to initiative and referendum as though it were a city or town. The "unmistakable implication" Hancock finds is that the reserved powers of initiative and referendum

are included in the District's grant of municipality status.

We reject Hancock's arguments. A stadium district is not a municipality. As provided by A.R.S. section 48–4202(D) (Supp.1996), a stadium district is "a tax levying public improvement district and a political taxing subdivision of this state." Nowhere is a stadium district defined as a municipal corporation, municipality, city, town or county. Article 13, section 7, provides that tax levying public improvement districts are vested with rights, privileges and benefits of municipalities; it does not say that these districts *are* municipalities. In fact, because this constitutional provision grants certain types of districts the rights afforded municipalities, the implication is that such districts are not municipalities and would not be afforded the rights of municipalities unless they were specifically conferred on those districts.

The intent of the framers of the Arizona Constitution on this issue is ascertainable by reference to *The Records of the Arizona Constitutional Convention of 1910* (John S. Goff ed., 1991) ("*The Records*"). The *Records* show that the delegates considered and then rejected proposals to extend the initiative and referendum powers to districts. For example, delegate Baker unsuccessfully argued against the proposal which ultimately limited the right of initiative to cities, towns and counties, as follows:

> Mr. Chairman, I am opposed to this amendment for the reason that it is not broad enough. It is not extensive enough; it does not give the people in certain localities an opportunity to use the initiative and referendum, to which I believe they are all entitled. You will notice that the language used reserves the right to the qualified electors of every incorporated city, town and county. It extends no further, the well established rule of law being that when certain things are enumerated or stated in a statute or in a constitution, all others not directly mentioned are excluded. Now, under this rule the initiative and referendum will be *strictly limited to the city, the town, and the county;* but here you have your irrigation districts. Here in this county, and in all counties, you have

school districts which exercise local powers to pass local rules and regulations, such as the issuance of bonds, purchase of school sites or changing of school houses. Under this measure every school district, no matter how directly interested the people may be in the matter, cannot use the initiative and referendum, simply because it is limited to cities, towns and counties. That is my objection to the amendment. It cripples its use. The language in the original bill is much better, and would cover any body that does any legislating or makes any local regulations.

*The Records, supra,* at 176–177 (emphasis added). The question of adding districts to the initiative and referendum provision was debated on many other occasions at the Constitutional Convention of 1910. *See id.* at 179, 180, 219, 222, 228. Proposition No. 6, section 5, proposed, in part, the following:

> The initiative and referendum powers of the people are hereby further reserved to the legal voters of each municipality and district as to all local, special, and municipal legislation of every character in and for their respective municipalities and districts.

*Id.* at 1036. The delegates, however, adopted a substitute version of a different proposal, Proposition 4, which excluded districts. *Id.* at 733–51, 1030, 1358.

■ Our primary purpose when interpreting a constitutional provision is "to effectuate the intent of those who framed the provision." *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). As can be seen from the history, the intent of the framers of art. 4, pt. 1, section 1(8) was that the initiative power would not be reserved to qualified electors of a district. Thus, we conclude that Hancock was not entitled to obtain a number for an initiative petition to attempt to repeal an action of the District.

Our conclusion is in accord with the holding of the court in *Board of Education of the Palo Alto Unified School District v. Superior Court of Santa Clara County,* 93 Cal.App.3d 578, 155 Cal.Rptr. 839 (1979). Article II, section 11 of the California Constitution provides that "[i]nitiative and referendum powers may be exercised by the electors of each

*city* or *county.*" *Id.* 155 Cal.Rptr. at 841 (emphasis in original). The court held that these powers did not extend to the acts or resolutions of other public entities, agencies or districts. *Id.*

In summary, we hold that the Arizona Constitution reserves no right of initiative to the citizens of a stadium district. Therefore, we affirm the trial court's dismissal of Hancock's petition seeking an order compelling McCarroll to accept his application for an initiative petition to repeal the District's levy of a transaction privilege tax.

### C. Is Initiative Available to Repeal the Establishment of a Stadium District Created by a County Board of Supervisors?

Hancock argues that because the act that the initiative seeks to rescind could have been taken to the voters in the form of a referendum, it is properly subject to rescission through the coequal right of initiative. He also contends that the legislature cannot by legislation indirectly take away the right of initiative. He argues that the creation of initiative-immune special districts for which the legislature has provided no statutory method of dissolution constitutes indirect interference with the initiative power reserved to the electorate.

In response, McCarroll points out that the initiative right against the county exists only for county matters on which the county is empowered by general laws to legislate. She therefore argues that because the County Board is not empowered to dissolve a stadium district it creates, the electors of the county do not have the constitutional power to force an initiative to dissolve the District.

We reject Hancock's suggestion that the legislature placed the legislation at issue here beyond the reach of the people. The enact-

ment in 1990 of A.R.S. section 48–4202, which permitted a board of supervisors to organize a stadium district, could have been referred to the people by referendum petition filed within 90 days of adjournment of that legislative session. *See* Ariz. Const. art. IV, pt. 1, § 1(4); A.R.S. §§ 19–101 to –143 (Supp. 1996). An initiative petition also could have been submitted at any time prior to the County Board's resolution creating the District. *See* Ariz. Const. art IV, pt. 1, § 1(4); A.R.S. § 19–143 (Supp.1996). Additionally, the County Board's resolution creating the District could have been referred to the people by referendum petition filed within 30 days after passage of the resolution. *See* Ariz. Const. art. IV, pt. 1; A.R.S. § 19–142(A) (Supp.1996).

■ The right of initiative reserved to the qualified electors of a county is limited by the express terms of the Arizona Constitution to "county matters on which such ... counties are or shall be empowered by general laws to legislate." Ariz. Const. art. IV, pt. 1, § 1(8).[3] If the Maricopa County Board of Supervisors has no legislative authority to pass a measure, then the electors of the county do not enjoy the constitutional power of initiative upon the matter. If the initiative right does not exist, the clerk of the board does not have a duty to issue a petition number for such a proposed initiative.

The delegates to the Constitutional Convention discussed the limits on the powers of counties when they considered adoption of local initiative and referendum measures. The delegates expressed concern about counties interfering with the rights of citizens in cities and towns and *vice versa.* Delegate Baker argued that the term "local special legislation" in the original proposal was sufficient to limit the power to matters delegated to local jurisdictions by the general laws

---

**3.** It should be noted that the initiative power reserved to county electors is much narrower than the broad power to enact statewide legislation and constitutional amendments reserved to qualified electors of the *state.* Article IV, pt. 1, § 1(1) provides:

> The legislative authority of the state shall be vested in the legislature, consisting of a senate and house of representatives, but the people reserve the power to propose laws and amend-

> ments to the constitution and to enact or reject such laws and amendments at the polls, independently of the legislature. . . .

Thus, while a majority of the electors of the state have broad powers to enact legislation through the initiative process, the majority of the electors of cities, towns or counties have only the power to enact measures on matters on which the legislature has empowered them to legislate.

enacted by the legislature. *The Records, supra,* at 178. Delegate Cassidy then argued for a clarification of language in order to be certain to limit the local initiative power:

> Now, I say, if this language is ambiguous or uncertain,. and I find that it is uncertain because members of the convention do not agree as to what it means, then now is the time to make it certain, and if it means to *authorize counties to legislate only on matters concerning subjects on which they are authorized by general law* then why not add those words and make it specific— make it certain.

*Id.* at 179 (emphasis added). The term "local special legislation" was ultimately replaced with the phrase "on which such incorporated cities, towns and counties are or shall be empowered by general laws to legislate." *See* Ariz. Const. art. IV, pt. 1, § 1(8).

█ The Arizona courts have interpreted issues of delegated powers consistent with the understanding of the framers of the Arizona Constitution. It is well-settled that the legislative powers of counties are very limited. "The law-making powers of the county . . . are entirely derivative. The Board of Supervisors can exercise only those powers specifically ceded to it by the legislature." *Hart v. Bayless Investment & Trading Co.,* 86 Ariz. 379, 384, 346 P.2d 1101, 1105 (1959). A county board of supervisors has only those powers "expressly conferred by statute, or [as] necessarily implied therefrom." *State ex rel. Pickrell v. Downey,* 102 Ariz. 360, 363, 430 P.2d 122, 125 (1967). County supervisors "may exercise no powers except those specifically granted by statute and in the manner fixed by statute." *Mohave County v. Mohave–Kingman Estates, Inc.,* 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978) (citing *State Board of Control v. Buckstegge,* 18 Ariz. 277, 158 P. 837 (1916)).

█ Actions taken by a board of supervisors by methods unrecognized by statute are "without jurisdiction and wholly void." *Mohave–Kingman,* 120 Ariz. at 420, 586 P.2d at 981 (quoting *State Board of Control v. Buckstegge,* 18 Ariz. 277, 158 P. 837 (1916)). A governmental body may not do indirectly what a statute does not give it the power to do directly. *Davis v. Hale,* 96 Ariz. 219, 225, 393 P.2d 912, 916 (1964).

█ The question whether authority exists for the county to act "must be approached from the affirmative, that is, what constitutional or statutory authority can the county rely upon to support its questioned conduct?" *Maricopa County v. Black,* 19 Ariz.App. 239, 241, 506 P.2d 279, 281 (1973). The absence of a statutory prohibition does not mean the county has inherent authority to engage in certain conduct. *Id.*

The board of supervisors' power to repeal its own ordinances has been limited by the legislature to matters necessary to conducting *county* business. A.R.S. section 11–251.05(A)(1) (Supp.1996) provides:

> A. The board of supervisors may:
> 1. In the conduct of *county business,* adopt, amend and repeal all ordinances necessary or proper to carry out the duties, responsibilities and functions of the county which are not otherwise specifically limited by § 11–251 or any other law or in conflict with any rule or law of this state.

(Emphasis added).

█ The business of a stadium district is not the business of the county in which it is located. Once a stadium district is "organized" pursuant to A.R.S. section 48–4202(A), the stadium district's business is conducted by a board of directors. A.R.S. § 48–4203 (Supp.1996). Repeal of a resolution creating a stadium district cannot be characterized as "necessary or proper to carry out the duties, responsibilities and functions of the county." A.R.S. § 11–251.05(A)(1) (Supp.1996). These duties are set forth in A.R.S. section 11–251 to –269.02 (Supp.1996) and include no authority to conduct the affairs of a stadium district. Such an action would be in conflict with the legislative intent that once a stadium district has been established as a separate political subdivision of the state, all of its business is conducted by its own board of directors, not the board of supervisors of a county. We recognize that the same people sit on both the county board of supervisors and the stadium district board of directors. Nevertheless, the county and the stadium

district are distinct legal entities and must be considered as such.

The legislature, either in A.R.S. section 48–4202 or elsewhere, has not delegated the power to dissolve a stadium district to a county board of supervisors. The County Board (or the electors of the county through initiative) may not do indirectly by way of repeal of an ordinance what the County Board may not do directly. When the legislature has intended that a special taxing or other district may be dissolved, it has expressly provided for the event by statute. For example:

● A County Free Library District may be established by a county board of supervisors pursuant to A.R.S. section 48–3901(A) (1988), and the supervisors serve as the "board of directors" of the district pursuant to A.R.S. section 48–3901(C) (1988). The Library District may be dissolved by this "board of directors" pursuant to A.R.S. section 48–3905 (1988).

● Pest Control Districts created pursuant to A.R.S. section 48–402 (1988) may be dissolved pursuant to A.R.S. section 48–410 (1988) by order of its "board of directors" or in the same manner in which it was formed (pursuant to a petition to form the district).

● Fire Districts may be dissolved by filing a petition with the "governing body" of the district. A.R.S. § 48–815(A) (1988).

● County Improvement Districts may be established pursuant to A.R.S. section 48–903 (Supp.1996) and may have an elected board of directors. The "board of directors," pursuant to A.R.S. section 48–959 (1988), may dissolve the district only if the bonds and obligations of the district are paid and the operation and maintenance functions of the district are assumed by a city, town or county.

● Cotton Pest Control Districts may be formed upon unanimous consent of all cotton producers in the district, by a petition filed with the cotton research and protection council. A.R.S. § 48–1302 (Supp. 1996). The district may be dissolved, pursuant to A.R.S. section 48–1312 (Supp. 1996), upon a majority vote of the directors.

Importantly, the power to dissolve, if granted, is granted to the board of the entity to be dissolved, rather than to the board of supervisors.

The functioning of the District, a separate political subdivision of the state, is not a matter of county business. If the board of supervisors attempted to dissolve the District by repealing the organization resolution, it would be acting beyond its delegated powers and encroaching on the affairs of another political subdivision of the state. The electors of the county through initiative may not do what the County Board is not empowered by general laws to do. Therefore, there is no initiative right to dissolve the District by repealing the resolution that created the District. There is no duty of the clerk of the County Board to process the petition proposing such a measure.

Accordingly, we affirm the trial court's dismissal of this action.

NOYES, P.J., and FIDEL, J., concur.