942 P.2d 1182

**Edina L. ROBERTSON, a qualified elector and resident of the City of Peoria, Plaintiff–Appellee,**

v.

**Janice GRAZIANO, City Clerk for the City of Peoria, in her official capacity, Defendant–Appellant.**

**No. 1 CA–CV 97–0230.**

Court of Appeals of Arizona, Division 1, Department C.

July 31, 1997.

Richard W. Garnett, III, Assistant City Attorney, City of Peoria, Scottsdale, for Defendant–Appellant.

Santin, Poli, Ball, Sims & Cook, PLC by Kathy W. Cook, Jeffrey Messing, K. Scott Reynolds, Phoenix, for Plaintiff–Appellee.

## OPINION

TOCI, Judge.

The central issue in this case is whether the electors of the City of Peoria ("the City") can by initiative amend the charter to require the City to employ a minimum of 1.5 full-time police officers per one thousand residents. The City contends that the challenged initiative is a budgetary matter and that, by analogy to the Arizona cases precluding zoning by initiative, state regulation of the budgeting process preempts an initiative on matters affecting the budget. We conclude that the state has not reserved to itself in municipal budgeting the same degree of authority it reserved over zoning matters and that the initiative is not therefore preempted by state budget law. We affirm the decision of the trial court ordering that the initiative be placed on the ballot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Peoria City Clerk issued an initiative petition to Edina L. Robertson, a registered

voter and resident of the City of Peoria. Robertson secured more than the necessary signatures required to place the measure on the ballot. Nevertheless, based on advice of the city attorney, the city clerk refused to accept the petitions. The city attorney had determined that the initiative was "not a valid exercise of the legislative power and [was] not subject to certification and placement upon the ballot for submission to the qualified electors" in the March 10, 1997 election.

Robertson filed a special action in superior court challenging the city clerk's refusal. The court acknowledged that the parties had stipulated that "the initiative has been properly brought to the City for placement on the ballot" and granted Robertson's motion for summary judgment. In ruling on the motion, the court did not determine the constitutionality or validity of the initiative nor evaluate its wisdom but it found that "the initiative is a proper subject matter for the initiative process." The City appealed. We agree with the trial court and therefore affirm.

## II. DISCUSSION

### A. Court's Role in Reviewing an Initiative

Our constitution reserves to the people the power to legislate through the initiative and referendum procedures "as to all local, city ... matters on which such incorporated cities ... are or shall be empowered by general laws to legislate. Such ... cities ... may prescribe the manner of exercising said powers within the restrictions of general laws." Ariz. Const. art. 4, pt. 1, § 1(8).[1] *See also Tilson v. Mofford,* 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987). The power of the people to legislate, however, is no greater than that of the municipal body itself. Eugene McQuillen, *The Law of Municipal Corporations,* § 16.52, at 284 (3d ed. 1996).

■ Under the separation of powers doctrine, the courts' role is to decide "what the law is and what the constitution contains, but not what it *should* contain." *Tilson,* 153

1. Peoria's charter reserves to the electors the powers of the initiative and referendum but does

Ariz. at 470, 737 P.2d at 1369. Unless a measure is clearly invalid on its face, we will not pass on its validity before the electorate votes on it. *Id.* We have held, for example, that "the legality of the substance of an initiative cannot be reviewed until [it] is adopted by the electorate and is later at issue in a specific case." *Id.* at 471, 737 P.2d at 1370. *See also Fairness & Accountability in Ins. Reform v. Greene,* 180 Ariz. 582, 587, 886 P.2d 1338, 1343 (1994) (a measure's text is part of legislative process and not subject to review before adoption); *Kromko v. Superior Court,* 168 Ariz. 51, 57, 811 P.2d 12, 18 (1991) (court's power to halt placing initiative on auto insurance reform on ballot is limited); *Williams v. Parrack,* 83 Ariz. 227, 231, 319 P.2d 989, 991 (1957) (court will enjoin neither city council nor electorate from adopting ordinance if it is legislative and within scope of municipal power).

■ The courts will intervene, however, to ensure that a petition is not defective in form, bears the required number of signatures, and does not violate the prescribed procedure. *Id.* A petition may be *defective in form* if it attempts to legislate on a matter not subject to the people's legislative power. *See Saggio v. Connelly,* 147 Ariz. 240, 241, 709 P.2d 874, 875 (1985) (petition is defective in form if it is not "legislation").

### B. Is the Initiative "Legislation"?

■ Our constitution confers the power of the initiative to incorporated cities on matters on which such cities are "empowered by general laws to legislate." Ariz. Const. art. 4, pt. 1, § 1(8). The City urges us to review this initiative to determine if it is a matter on which the City is empowered to legislate. We first turn to whether this is "legislation" or an attempt to enact merely an administrative measure.

In *Saggio,* our supreme court affirmed denial of a writ of mandamus to compel placing an initiative on the ballot. 147 Ariz. at 240, 242, 709 P.2d at 874, 876. The initiative sought an election on whether to dissolve the city government. *Id.* at 240, 709 P.2d at 874.

not prescribe any different manner of exercising those powers than do the general laws.

The trial court denied the writ because the city lacked power "to legislate its own disincorporation"; only the state held that power. *Id.* at 241, 709 P.2d at 875. The supreme court agreed and further found that the proposal essentially requested a public opinion poll but did not enact anything. *Id.* Thus, "[a]lthough the constitutionality of a proposed initiative will not be considered prior to its adoption, we will consider whether an initiative petition is defective in form. By review of the form ... we mean an examination of it to determine whether it is, in fact, legislation." *Id.* (citation omitted).

■ Legislation "is a definite, specific act or resolution," and "must enact something." *Id.* The instant initiative will amend the charter to require hiring of a specific ratio of police officers to match Peoria's population; it also bars the City from lowering "hiring standards or qualifications" or reducing wages or benefits of police officers. Therefore, because it will enact specific rules or regulations, it qualifies as "legislation." *See Wennerstrom v. City of Mesa,* 169 Ariz. 485, 489–90, 821 P.2d 146, 150–51 (1991) (setting policy, enacting a law or permanent rule, or declaring a public purpose and the means of attainment are "legislative" acts); *Fuldauer v. City of Cleveland,* 32 Ohio St.2d 114, 290 N.E.2d 546, 549 (1972) (voters' adoption of city charter amendment setting salaries of firefighters and police officers was exercise of legislative power); *City of Las Vegas v. Ackerman,* 85 Nev. 493, 457 P.2d 525, 528 (1969) (initiative increasing firefighters' salaries a legislative act); *State ex rel. Payne v. City of Spokane,* 17 Wash.2d 22, 134 P.2d 950, 951 (1943) (initiative fixing firefighters' salaries is legislative). *Contra In re Supreme Court Adjudication,* 597 P.2d 1208, 1209–11 (Okla.1979) (initiative setting minimum number of police and their pay through tax increase is administrative, not legislative).

■ But, even if this is "legislation," the City contends that it is a subject matter on which the voters may not legislate. It cites a number of cases, including *Hancock v. McCarroll,* 188 Ariz. 492, 937 P.2d 682 (App. 1996), to argue that the court may predetermine whether the initiative concerns a proper subject matter. In *Hancock,* a citizen sought by initiative to repeal a county resolution creating a stadium district and the tax to build the stadium. *Id.* We affirmed the clerk's denial of an initiative petition because the statute authorizing the county to form a stadium district did not grant the initiative power to the district's electors. *Id.* at 495 – 96, 937 P.2d at 685–87. Thus, no elector could compel the district to accept the initiative, and even the county had no express legislative power to repeal the resolution creating the district. *Id.* at 497 – 98, 937 P.2d at 687–89. Because *Hancock* found no power of initiative existed, it does not govern this case.

We acknowledge, however, that in some instances, our courts have determined in advance of an election that the subject matter is not one on which a city or its voters may legislate. For example, in *Transamerica Title Ins. Co. v. Tucson,* 157 Ariz. 346, 347, 757 P.2d 1055, 1056 (1988), an initiative sought to amend the city charter to require voter approval of zoning changes in land around open space preserves. Owners of affected property claimed that the initiative illegally attempted to zone their land. *Id.* The supreme court upheld an injunction to halt the initiative; it reasoned that a city has no inherent zoning power but has only that power delegated to it by the state and that state law dictates the procedure for adopting zoning measures. *Id.* at 350, 757 P.2d at 1059. The initiative process did not comply with the procedural protections embodied in the statutes and thus could not be used to enact zoning. *Id.*

The *Transamerica* court relied on *City of Scottsdale v. Superior Court,* 103 Ariz. 204, 207–08, 439 P.2d 290, 293–94 (1968), in which the court held that due process and the express statutory delegation of zoning power to the city council prohibited amendment of a comprehensive zoning plan by initiative. The court agreed with a California court's holding that when a statute confers the zoning power on the city council and also prescribes the method for adopting zoning laws, " 'the method of enactment is the measure of the power to enact.' " *Id.* at 208, 439 P.2d at 294 (quoting *Laguna Beach Taxpayers' Ass'n v. City Council,* 187 Cal.App.2d 412, 9

Cal.Rptr. 775 (1960)). Because the initiative did not conform to the methods imposed by the zoning laws, the electors could not adopt zoning laws by that means. *Id.*

Similarly, in *Cota–Robles v. Mayor & Council of Tucson,* 163 Ariz. 143, 144, 786 P.2d 994, 995 (App.1989), the court affirmed dismissal of a complaint to compel the city to hold an election on a proposed highway's alignment. State law vests power over state highways exclusively in the state department of transportation, and highway placement is a matter of statewide concern. *Id.* at 146, 786 P.2d at 997. The court held that state law preempted the field, and the city's voters could not legislate on the matter. *Id.*[2]

*Scottsdale, Transamerica,* and *Cota–Robles* all are faithful to art. 4, pt. 1, § 1(8) of the Arizona Constitution, which reserves the power of initiative to the people as to "all local, city ... matters on which ... cities are ... empowered" by the state to legislate. Reduced to their simplest form, these cases stand for the proposition that because cities do not have the power to legislate in the field of zoning and highway alignment except as allowed by state law, the electorate may not circumvent state law through the initiative process.

We now turn to the City's assertion that, just as the zoning process is protected from the people's exercise of the initiative power, so is the City's budgeting process. The City argues here that by specifying the number of full-time commissioned police officers that must be employed, the challenged initiative usurps the city council's authority and obligations in budgeting matters and circumvents the hearing process preceding budget adoption. By analogy to the zoning statutes and cases, the City asserts that statutory regulation of the budget process preempts an initiative on matters affecting the budget. We conclude that the City's analogy fails for several reasons.

First, the legislature has not totally occupied the field of municipal fiscal operations as it has the field of municipal zoning. The authority for city zoning springs from direct delegation by the state. *See* Ariz.Rev. Stat. Ann. ("A.R.S.") § 9–462.01. The state legislation prescribes the specific manner in which a city may regulate the use of real property. *See* A.R.S. § 9–462.01 *et seq.* A city has no power to zone except as delegated by the legislature. *Scottsdale,* 103 Ariz. at 207, 439 P.2d at 293. In contrast, although the City is subject to the state budget laws, the power of a charter city such as Peoria to conduct its operations is not derived from the budget laws, but from the Constitution. *See City of Tucson v. Tucson Sunshine Climate Club,* 64 Ariz. 1, 4, 164 P.2d 598, 599 (1945).

Thus, unlike the state zoning statutes, the state budgeting statutes contain no indication of a legislative intent to completely occupy every aspect of city fiscal operations. For example, the state budgeting statutes do not specify what matters can be placed in a budget or how much can be spent on any given item. Those decisions are left to the discretion of the city council. And, although a city must publish estimates and notice of a public budget hearing,[3] at which any taxpayer may appear and be heard,[4] the laws do not require notice and a hearing every time a city expends money. In contrast, zoning laws properly require notice and a hearing on every zoning ordinance or amendment because of the impact zoning has on individual property interests. A.R.S. §§ 9–462.03, 9–462.04. Therefore, we cannot agree that the state has reserved to itself in municipal budget matters the degree of authority it reserved over zoning.

Furthermore, in contrast to the zoning cases, which struck down initiative measures that conflicted with the state zoning law, we find nothing in the instant initiative that circumvents the state budget laws. If adopted, the initiative may "automate" the size and expense of the City's police force,

2. We note that referendum cases such as *Cota–Robles* are subject to a different standard of review than initiative cases. *See Wennerstrom,* 169 Ariz. at 488, 821 P.2d at 149. Notwithstanding, *Cota–Robles* is apposite on the issue of preemption.

3. A.R.S. section 42–302(F).

4. A.R.S. section 42–303(A).

but we can find no resulting budget law violation. No law prescribes the items on which a city may spend its money or, more specifically, prescribes the way in which the City must determine the number, salaries, or qualifications of its police officers. The City's budget will still be subject to the normal procedural requirements set forth in A.R.S. section 42–302. Thus, the initiative does not "usurp" power that inherently or exclusively resides in the state.

Further, whether the citizens adopt the measure, or whether the city council itself were to adopt an ordinance to the same effect, mere "impact" on the city budget is not sufficient to invalidate the measure. No evidence in this record suggests that the measure will cause the City to exceed statutory or constitutional budget limits. If the budget does exceed the limitation established by law, the council can reduce other expenditures or resolve the competing demands on its revenues as best it can. *See Fuldauer,* 290 N.E.2d at 551 (charter amendment could set spending for police as top budget priority); *City of Spokane,* 134 P.2d at 952 (city council must decide how to pay for increased firefighter salaries if proposed initiative passed).

The City additionally argues that the initiative will create a "debt," but that if it does so, the initiative is preempted by state laws regulating the City's indebtedness. Even if we agreed with the first premise, nothing in the record shows that this measure will cause the City to exceed its debt limits. If and when the measure passes, the City then must determine how to pay for any additional expense. That this item may be a "locally enacted, perpetual unfunded obligation" does not distinguish it from any number of other local, unfunded obligations that arise from the City's continuing duty to provide services to its citizens.

Having concluded that this initiative proposes "legislation" appropriate to decision by the reserved power of the citizens and that the proposal does not transgress the state-mandated procedures governing the City's budget process or debt limits, we hold that it must be subjected to an election.

### III. CONCLUSION

We affirm the trial court's order directing the City to accept the initiative petitions. Additionally, we grant Robertson's request for an award of her attorney's fees under A.R.S. sections 12–2030(A),(B) (Supp.1996). The statute provides that the court "shall award fees and other expenses to any party ... which prevails by an adjudication on the merits in a civil action" brought to compel an officer of a political subdivision to perform a legal duty. A.R.S. § 12–2030(A). We further award Robertson her costs under A.R.S. section 12–341 (1992). Robertson is directed to comply with Rule 21, Arizona Rules of Civil Appellate Procedure (1997).

GERBER, P.J., and SULT, J., concur.