NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JENNIFER ESPOSITO,
*Plaintiff/Appellant*,

*v.*

WILMA BISHOP; TRAVIS LINGENFELTER; BUSTER JOHNSON;
HILDY ANGIUS; RON GOULD; MOHAVE COUNTY; GOLDEN
VALLEY IMPROVEMENT DISTRICT NO. 1,
*Defendants/Appellees*.

No. 1 CA-CV 24-0533

FILED 04-10-2025

Appeal from the Superior Court in Mohave County
No. S8015CV202300760
The Honorable David Thorn, Judge

**AFFIRMED**

APPEARANCES

Jennifer Esposito, Kingman
*Plaintiff/Appellant*

Mohave County Attorney's Office, Kingman
By Ryan H. Esplin
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**W I L L I A M S,** Judge:

¶1        Jennifer Esposito appeals the grant of summary judgment for the Mohave County Board of Supervisors, Mohave County, and the Golden Valley Improvement District No. 1 (collectively "Respondents"). For reasons that follow, we affirm.

## BACKGROUND

¶2        In 1976, the Mohave County Board of Supervisors formed the Golden Valley Improvement District No. 1 ("GVID") to provide water services for "the public convenience, necessity and welfare" of county residents. Pursuant to A.R.S. § 48-908, the County Board of Supervisors serves as GVID's Board of Directors ("the BOD"). GVID is funded from revenue generated by its water sales.

¶3        It is not clear from the record how many times the BOD increased water rates between 1976 and 2023. But in May 2023, the BOD voted to increase water rates after GVID's annual operation and maintenance costs exceeded annual revenues for four consecutive years. The increased rate structure, as it had at least in recent years, charged different rates for metered customers, standpipe customers within GVID's geographical boundaries, and standpipe customers outside of GVID's geographical boundaries.

¶4        Esposito owns real property within GVID's geographical boundaries, but she is not a GVID customer. Instead, she receives her water through a commercial delivery service which obtains its water from GVID. Esposito sued Respondents after the BOD increased water rates. She also petitioned the superior court for a temporary injunction blocking the increased rates from taking effect. Among other things, Esposito alleged the new rate structure increased her water delivery cost by fifty percent.

¶5        The superior court held an evidentiary hearing on Esposito's petition for a temporary injunction over two different days (one in June and one in July), ultimately denying it.

**¶6** In November 2023, Respondents moved for summary judgment. In May 2024, after a change in judicial officers assigned to the case, the superior court held oral argument on the summary judgment motion. Esposito asserts that the new judicial officer acknowledged at oral argument he had not watched the video of the previously held temporary injunction hearings, nor did he intend to. After taking the matter under advisement, the court granted summary judgment in favor of Respondents.

**¶7** Esposito timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶8** On appeal, Esposito argues the superior court erred in three ways: (1) by failing to determine if the two-day temporary injunction hearing was handled properly, as well as by failing to review a recording of that hearing and consider "testimonial evidence" before ruling on the motion for summary judgment; (2) by concluding that the BOD's increased water rates reflected "proportionate shares of the cost of operation, maintenance, and replacement of a water delivery system" in accordance with A.R.S. § 48-910; and (3) by holding that the powers of referendum and initiative are not available to the qualified electors of a county improvement district.

**¶9** Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review *de novo* the superior court's grant of summary judgment, viewing the facts and reasonable inferences in the light most favorable to Esposito as the non-moving party. *Rosenberg v. Sanders*, 256 Ariz. 359, 364, ¶ 24 (2023).

## I. Video Recording of the Two-Day Temporary Injunction Hearing

**¶10** Esposito first contends the superior court erred by not reviewing a video recording of the two-day temporary injunction hearing to determine if the hearing was handled properly. She further argues the court's failure to review the recording and consider testimony from that hearing before ruling on the motion for summary judgment was error.

**¶11** When ruling on a motion for summary judgment, a court may not consider evidence outside the record. *See Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 10 (App. 2009); Ariz. R. Civ. P. 56(c)(3)(A)(ii), (B)(i)–(ii). Esposito has not provided us with a transcript of the temporary injunction hearing, and

nothing in the record confirms that a video recording of that hearing exists. As the appellant, Esposito was responsible to ensure the appellate record contained all transcripts necessary for us to consider the issues raised. ARCAP 11(b). She has not. On this record, Esposito has shown no error.

## II.      Proportionality Under A.R.S. § 48-910(A)(1)

**¶12**        Esposito next argues the BOD's rate structure disproportionately assesses fees to its customers. Section 48-910(A)(1) authorizes the BOD to set "[u]ser fees that are proportionate shares of the cost of operation, maintenance and replacement of [the] water delivery system." Determining those costs are "highly relevant to setting just and reasonable rates," and may result in "different rates for constituent classes within a single district." *Sun City Home Owners Ass'n v. Ariz. Corp. Comm'n*, 252 Ariz. 1, 8, ¶¶ 30–31 (2021); *see also Jung v. City of Phoenix*, 160 Ariz. 38, 40 (1989) (holding that the city may charge different rates to residents and nonresidents).

**¶13**        Record evidence shows that GVID's operation and maintenance costs exceeded its revenues by an average of $290,000 annually over the four fiscal years preceding the 2023 meeting. County staff projected future deficits of about $250,000 annually if the BOD did nothing. The BOD anticipated "additional revenue [of] about $273,720 per year" from its increased rates. Esposito did not contest those figures in the superior court, nor does she contest them on appeal. Instead, she argues that "[a]ny reasonable person would conclude" the only way for GVID to proportionately charge user fees is to assess fees "by the gallon, period [*sic*]" rather than charging different rates for metered customers compared to standpipe customers, whether located within GVID's boundaries or without.

**¶14**        Differing classes of users, even within the same district, may be charged different user fees so long as those fees are not assessed arbitrarily, unlawfully, or are unsupported by substantial evidence. *Sun City*, 252 Ariz. at 8, ¶ 30. The superior court found that "[t]he rate increase is proportionate to the cost of operating, maintaining, and replacement of the water delivery system," and Esposito points us to nothing in the record to show that the differing user rates were apportioned arbitrarily. Record evidence supports the court's finding. Esposito has shown no error.

### III.    Referendum

**¶15**    Lastly, Esposito maintains the superior court erred in concluding that the powers of initiative and referendum are not available to the qualified electors of a county improvement district.

**¶16**    The Arizona Constitution reserves the powers of initiative and referendum "to the qualified electors of every incorporated city, town and county as to all local, city, town or county matters on which such [] cities, towns or counties are or shall be empowered . . . to legislate." Ariz. Const. art. 4, pt. 1, § 1 (8). Though county improvement districts, such as GVID, are special taxing districts "with the powers of a municipal corporation," A.R.S. § 48-906(A), the legislature "d[id] not say that these districts *are* municipalities," *Hancock v. McCarroll*, 188 Ariz. 492, 496 (App. 1996). Instead, the legislature provided statutory mechanisms to review county improvement districts and their actions at the exclusion of referendum. *See, e.g.*, A.R.S. §§ 48-907, -917(A), -923. Moreover, this court previously held that the framers of the Arizona Constitution "rejected proposals to extend . . . referendum powers to districts." *Hancock*, 188 Ariz. at 496.

**¶17**    The water rate increase challenged by Esposito was enacted by GVID's BOD, and as such, is not subject to review by referendum. Consequently, we agree with the superior court that the "powers of referendum and initiative[] are not available to the qualified electors of a county improvement district created pursuant" to Title 48 of the Arizona Revised Statutes.

### CONCLUSION

**¶18**    We affirm.



MATTHEW J. MARTIN • **Clerk of the Court**
**FILED**:          JR

5