[Civil No. 1423.   Filed September 18, 1914.]

[143 Pac. 117.]

STATE ex rel. GEORGE PURDY BULLARD, Attorney General of the State of Arizona, Appellant, v. SIDNEY P. OSBORN, Secretary of State of the State of Arizona, Appellee.

1. STATUTES—ENACTMENT—SUBMISSION TO POPULAR VOTE—PETITION— "LEGALLY SUFFICIENT."—Within Civil Code of 1913, paragraph 3327, providing for enjoining the certifying or printing of a measure on the official ballot, if the initiative or referendum petition be not legally sufficient, it is "legally sufficient" if regular in form, genuine and free from fraud; the constitutionality of the law proposed by an initiative petition not entering into the question.

2. STATUTES—ENACTMENT—SUBMISSION TO POPULAR VOTE—INJUNCTION —CONSTITUTIONALITY OF LAW.—The submission of a measure by the initiative cannot be enjoined on the ground that the proposed law is unconstitutional, any more than could the introduction of a bill in the legislature; Constitution, article 22, section 14, providing that any law which may be enacted by the legislature may be enacted by the people.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   Frank O. Smith, Judge.   Affirmed.

The facts are stated in the opinion.

Mr. Leslie C. Hardy, Assistant to the Attorney General, Mr. George R. Hill and Mr. Norman J. Johnson, for Appellant.

Mr. Richard E. Sloan and Mr. James Westervelt, for Appellee.

PER CURIAM.—This is an action brought to restrain the
Secretary of State from certifying and causing to be printed
on the official ballot at the election to be held on November 3,
1914, an initiated measure to create and organize Miami
county. The complaint alleges:

"That the said proposed initiative bill is legally insufficient
in this: That it purports and is intended to provide for the
division of Gila county and to create the county of Miami,
and that the said bill has no application in any other part
of the state, and cannot operate at any other time than as
provided in the said proposed bill and that the same can
have no application to any other part of the state and cannot
operate at any other time, and that it is local and special
legislation, and is intended to divide a particular county and
to create a particular county, without reference to any other
counties, or to any other time, and that each of the matters
and things intended, provided, and proposed to be enacted can
be done by general law, and that the said proposed initiative
bill is in conflict with subdivision 20 of section 19, of article 4
of the Constitution of the state of Arizona, in that it is a
special, local law in a case where a general law can be made
applicable, and for these reasons the said proposed initiative
bill is legally insufficient within the scope and meaning of
paragraph 3327 of the Revised Statutes of Arizona."

A general demurrer to the complaint was sustained, and, the
plaintiff refusing to amend, judgment was rendered in favor
of defendant. The appeal is from this judgment.

Paragraph 3327, Civil Code of 1913, provides that:

" . . . On a showing that any petition is not legally suffi-
cient, the court may enjoin the Secretary of State and all
other officers from certifying or printing on the official ballot
for the ensuing election the ballot title and number of the
measure or proposed amendment to the Constitution set forth
in such petition. . . . "

It is conceded that the petition in this instance is regular
in form, and is signed by the requisite number of legal voters,
the only objection to the measure going on the official ballot
being that it is special legislation, and therefore, when tested
by subdivision 20 of section 19, article 4, of the Constitution,
is "legally insufficient." It is claimed that the Secretary
of State should look beyond the mere form of the petition and

into its substance with a view of determining if the proposed law is in conflict with the Constitution; that he should determine if the measure should be enacted whether it would be a valid law or not, and if in his judgment an invalid law, it is his duty to refuse to certify it for a place on the official ballot. The Constitution makes the petition an indispensably necessary thing and step in the process of legislation directly by the people. It is as much so as the drawing and introducing of a bill in the legislature by one of its members. Whether the voters in taking this step are acting ministerially or in their legislative capacity is immaterial. In either event the step is essential, made so by the Constitution and by legislation. Chapter 1, tit. 22, Civ. Code 1913.

The government of the state is divided into three separate departments, the legislative, the executive, and judicial, and it is provided by the Constitution (article 3) that:

"Such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

In *Allen* v. *State,* 14 Ariz. 458, 44 L. R. A. (N. S.) 468, 130 Pac. 1114, we said:

"The people did not commit to the legislature the whole law-making power of the state, but they especially reserved in themselves the power to initiate and defeat legislation by their votes. In this state the legislature and the people constitute the law-making power."

The appellant concedes that the courts are powerless to restrain a member of the legislature from introducing any measure, valid or invalid, for the reason that the courts cannot interfere with the action of the legislative department. What legal warrant has a court to enjoin the Secretary of State from certifying a measure whether valid or invalid? Is not the initiative petition also a step in the process of legislation? For the Secretary of State, or the courts, to assume in advance the power and right to decide whether the proposed measure was invalid would be tantamount to claiming the power of life and death over every initiated measure by the people. It would limit the right of the people to propose only valid laws, whereas the other law-making body, the legislature, would go untrammeled as to the legal soundness of its

measures. Such differentiation of powers is expressly prohibited by section 14, article 22, Constitution, which says:

"Any law which may be enacted by the legislature under this Constitution may be enacted by the people under the initiative. Any law which may not be enacted by the legislature under this Constitution shall not be enacted by the people."

This certainly means that the power of the people to legislate is as great as the power of the legislature to legislate, and for the courts to assume a supervision of one of the law-making bodies, and require that measures proposed by it must first receive judicial sanction before action by that body, while the other may proceed without let or hindrance, is not in accordance with the letter or spirit of the Constitution.

We conclude, following Oklahoma and Oregon, whose Constitutions on the initiative are like ours, that the words "legally sufficient" as used in paragraph 3327, Civil Code of 1913, mean that the petition shall conform with the requirements of the law as to form and signature. It is not a legal petition if not regular in form, and does not contain the signatures of legal voters as required. Of course, this requires that the petition shall be genuine. If it is fraudulent or if the signatures are forged, it is not legally sufficient. As the court said in *State* v. *Olcott,* 62 Or. 277, at page 279, 125 Pac. 303, at page 304:

"We are of the opinion that by the term 'legally sufficient' the legislature meant to describe a valid petition, signed by legal voters, and complying substantially, not necessarily technically, with the requirements of the law."

The petition here attacked is not irregular, but in form conforms with the requirements of the law. In *Threadgill* v. *Cross,* 26 Okl. 403, 138 Am. St. Rep. 964, 109 Pac. 558, the court said that the secretary, in an action like this one, "may not defend against this proceeding by questioning the validity of the proposed amendment." The last court further said:

"In the procedure for amending the Constitution of this state (the same is true as to initiated laws), which can only be effected by an election thereon, it becomes necessary for the people of the state to call into their service certain of their executive officers, and require them to perform certain ministerial duties. If the placing of such duties upon such

ministerial officers gives in turn to them the right and power
to question the validity of any or all the amendments pro-
posed, and to refuse to act when they decide that any such
proposed measure will be invalid, then the most subordinate
ministerial officer of the state having any duties to perform
in connection with such an election may himself do indirectly
that which he could not have, nor any other citizen of the
state have the courts do by proceeding instituted for that
purpose, to wit, pass upon the validity of the proposed
measure and stay the election by a judicial decree, if it be
determined that the proposed measure is invalid.''

In *State ex rel. Cranmer* v. *Thorson,* 9 S. D. 149, 33 L. R. A.
582, 68 N. W. 202, it was said:

''Power to amend the Constitution belongs exclusively to
the legislature and electors. It is legislation of the most im-
portant character. This court has power to determine what
such legislation is, what the Constitution contains, but not
what it should contain. It has power to determine what
statutory laws exist, and whether or not they conflict with
the Constitution; but it cannot say what laws shall or shall
not be enacted. It has the power, and it is its duty, whenever
the question arises in the usual course of litigation, wherein
the substantial rights of any actual litigant are involved, to
decide whether any statute has been legally enacted, or
whether any change in the Constitution has been legally
effected, but it will hardly be contended that it can interpose
in any case to restrain the enactment of an unconstitutional
law.''

Whether or not the proposed law if enacted by the people
will be a valid exercise of the legislative power reserved by
them in their fundamental law is not in this case, and, of
course, cannot now be determined by this court. What we
do hold is that the appellant is precluded in this proceeding
from questioning the constitutionality of such proposed law.
If the people do enact such proposed law when submitted to
them at the polls, as well said in *Threadgill* v. *Cross, supra:*

''That question can and will be determined only when it is
presented to this court in the course of litigation by some
litigant whose rights are involved.''

In deciding this case, we are not concerned with questions
of policy, or as to whether it is right and proper that the

whole people of the state should be permitted to vote on the question of the division of Gila county and the creation of Miami county. The question of policy in thus allowing the whole people of the state to vote on what is concededly a local matter is one that belongs to another department. It is for us to declare the law as we find it.

Judgment affirmed.