757 P.2d 1055

TRANSAMERICA TITLE INSURANCE COMPANY TRUST NOS. 8295, 8297, 8298, 8299, 8300 AND 8301, Donald R. Diamond and Joan B. Diamond, husband and wife, William A. Estes, Jr. and Shirley A. Estes, husband and wife, Cienega Ltd., an Arizona corporation, Plaintiffs/Appellants,

v.

CITY OF TUCSON, an Arizona municipal corporation, Clerk of the City of Tucson, Donald De Ment, Pima County, a body politic, Clerk of the Pima County Board of Supervisors, Jane Williams, Defendants/Appellees,

and

Concerned Voters Council, Inc., an Arizona non-profit corporation, Intervenor/Appellee.

No. CV–87–0342–AP.

Supreme Court of Arizona, En Banc.

July 5, 1988.

Winston & Strawn, S.L. Schorr by John N. Iurino, Merle J. Turchik, Tucson, for plaintiffs/appellants.

Frederick S. Dean, Tucson City Atty., Tucson by Bradford C. Detrick, Asst. Tucson City Atty., for defendants/appellees City of Tucson/Donald De Ment.

Stephen D. Neely, Pima Co. Atty., Tucson by Peter E. Pearman, for defendants/appellees Pima County/Jane Williams.

Stompoly & Stroud, P.C., Tucson by David L. Horley, for intervenor/appellee.

HOLOHAN, Justice.

The appellants seek to set aside the judgment of the superior court denying injunctive relief against the city and county proceeding with the processing of initiative measures. This court has jurisdiction pursuant to A.R.S. § 19–122(C) and Ariz. Const. art. VI, § 5(3). The court accelerated the hearing of oral arguments on the appeal, and thereafter issued an order reversing the judgment of the superior court. The order provided that a written opinion would be filed at a later date. We now submit that opinion.

Appellants have raised a number of issues, but the only issue we need to address is whether the initiative process may be used to amend a city or county zoning ordinance. We hold that a city or county zoning ordinance may not be amended by an initiative.

On March 27, 1987, three registered voters in the City of Tucson filed an application with the city clerk for an initiative petition number. The proposed initiative would amend the Tucson City Charter by establishing areas adjacent to Saguaro National Monument, Coronado National Forest, Tucson Mountain Park, and other large "open space preserves" as "buffer zones." Although the initiative would not affect the current zoning on any parcel within the proposed buffer zones, any change in the zoning on any property within the buffer zones could not become effective until approved by a vote of the people.

On April 10, 1987, a Pima County registered voter applied for a county initiative petition serial number which would similarly amend the county's comprehensive zoning plan by establishing the same buffer zones and referendum requirements as those proposed in the city initiative. In all, more than 150,000 acres of land within the city and the county would be affected by the proposed buffer zones.

Sufficient signatures were obtained on the city initiative petition to have the proposal placed on the ballot for a November 3, 1987 election. The county initiative petitions had not been filed for certification at the time of filing the city petitions, nor were the initiative petitions filed with the county prior to the action filed by appellants.

On July 15, 1987, the appellants, who are citizens and property owners whose land lies within the proposed buffer zones, brought suit to enjoin the city and county clerks from taking further action on the proposed initiatives. In their complaint, the appellants alleged that the city and county clerks should be enjoined from taking further action on these petitions because they are illegal attempts to zone by initiative in violation of their due process and statutory rights to notice and a hearing before new restrictions are placed on their property. They also alleged that the city initiative improperly seeks to amend the Tucson City Charter without following the procedure mandated by the Arizona Constitution, and that the city initiative was untimely filed. At the time of filing their suit, appellants moved to consolidate their action with another, substantially similar, action brought by StarPass Development Company.[1] The trial court ordered consolidation on July 20, 1987.[2]

On July 20, 1987, Concerned Voters Council, Inc. ("CVC"), a nonprofit Arizona corporation whose members, officers, and board of directors support the initiatives at issue, filed motions to intervene and to quash the temporary restraining order. The trial court granted the motion to intervene and scheduled a hearing on the motion to quash.

On August 4, 1987, the trial court granted Pima County's motion to dismiss on grounds that the claims against the county

1. The major difference between the two actions was that the StarPass action challenged the city initiative petition only. Appellant's action also challenged the county initiative petition.

2. In its order granting consolidation, the trial court extended a temporary restraining order it had issued in the StarPass action to the appellants' action. Appellant's complaint also included an application for preliminary and permanent injunctions.

were not "ripe."[3] It also granted the intervenor's motion to quash the restraining order. Several days later, the trial court also denied appellant's application for preliminary injunction. Thereafter, appellants filed various motions which were denied. The trial court then entered final judgment against appellants on all claims with respect to the city initiative petition. The court found that the initiative petition was timely filed, that appellants' due process and statutory arguments were inapplicable because the proposed initiative did not propose to affect the use of property in any of the currently existing zones, and that the city charter could be amended by initiative. Appellants filed a timely appeal with this court.

■ The first matter to be resolved is the county's contention that the challenge to the proposed county initiative is not ripe for adjudication because the initiative petitions had not been filed with the county. The sole action taken by the county is that the clerk of the board of supervisors has issued an initiative serial number. The county contends, and the trial judge agreed, that it is premature at this time to adjudicate this matter because it cannot be determined whether sufficient signatures will be obtained or whether the initiative will pass should they obtain the number of signatures necessary to place the matter on the ballot. Hence, no "justiciable controversy" exists. *Planned Parenthood Center of Tucson, Inc. v. Marks*, 17 Ariz.App. 308, 497 P.2d 534 (1972).

Under the factual situation presented by this case we are unable to agree that this matter is premature. The appellants in one action challenged the process being used to amend both the city and county zoning ordinances. The process in the case of the city has proceeded to the point of scheduling an election, and the same effort is proceeding to obtain a similar result for the county. The principles of law dispositive of the matter are the same for both the city and the county. The interests of judicial economy and conservation of public resources make the case against the county ripe for determination.

The appellants argue that our decision in *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 439 P.2d 290 (1968), is dispositive of this matter. In *Scottsdale* a group of citizens attempted to rezone certain parcels by the initiative process. Affected land owners brought suit to obtain a judgment declaring the initiative petition void and that the Scottsdale City Clerk had exceeded her jurisdiction by accepting the initiative petition. The trial court ruled that a zoning ordinance could not be the subject of an initiative measure.

We affirmed the trial court's ruling stating:

> [I]t is clear and we hold that the initiative process is not available as a mode for amending a comprehensive zoning plan. It is an irreconcilable conflict with the due process clause of the United States Constitution, Fourteenth Amendment ...

*Id.* at 207, 439 P.2d at 293. (citations omitted)

In *Scottsdale*, we noted that zoning by initiative also violated "the express provision of the state statute which delegated zoning powers to 'the governing body of an incorporated city.' A.R.S. § 9–461, *et seq.*" *Id.* at 208, 439 P.2d at 294.[4] In addition, the State Zoning Enabling Act requires notice and hearing before any new zoning regulations are adopted. *Id.* For example, A.R.S. § 9–462.04 requires notice and a public hearing where a city zoning ordinance is to be adopted which changes any property from one zone to another, imposes any regulation not previously imposed or which removes or modifies any such regulation previously imposed. *See also* A.R.S.

---

**3.** At this point, StarPass moved to dismiss its complaint without prejudice because it had persuaded the city to rezone its property so that it would not be affected by the proposed city initiative.

**4.** Zoning powers are similarly delegated to the

§ 9–462.03.[5] Hence, in *Scottsdale* we concluded that "zoning law is exempted from the initiative process," in order to prevent private citizens from usurping the governing body's delegated power and from circumventing the notice and hearing requirements of the zoning statute. *Id.* at 208, 439 P.2d at 294; *see also Dewey v. Doxey–Layton Realty Co.,* 3 Utah 2d 1, 7, 277 P.2d 805, 809 (1954) ("electors of the city cannot by-pass [the notice and public hearing] provisions of the statute as long as the zoning statute remains in force.")

In the present case, the initiatives seek to amend the city and county comprehensive zoning plans by establishing a new classification of property. The property in the new classification, property within buffer zones, is to be treated differently from any other property within either the city or county zoning system. The county and intervenor attempt to limit the broad language of *Scottsdale* arguing that it dealt with an initiative which sought to change the *use* of specific property. The county and intervenor contend that the proposed initiatives change the *procedures* for rezonings, but they do not change the uses permitted on any particular property within the proposed buffer zones.

We reject this contention. It is clear that the proposed city and county initiatives would, in fact, establish new classifications or zones which would alter current property classification. Hence, they impermissibly usurp the city and county's delegated authority to amend their respective comprehensive zoning plans. Furthermore, these newly-created buffer zones would directly affect the use of appellants' property by adding new requirements to the rezoning process. The same concerns present in

*Scottsdale*—the property owner's due process and statutory rights to notice and hearing before the enactment of new legislation affecting his property—are present here. As pointed out in *Scottsdale*, the power granted by the state to the city to enact zoning laws also includes the power to prescribe the method to be used in enacting such laws. The initiative would add requirements to rezoning not authorized by the controlling state statutes.

Finally, intervenor asks this court to overrule *Scottsdale,* and adopt the "modern trend," which allows zoning by initiative. *See Associated Home Builders v. City of Livermore,* 18 Cal.3d 582, 588, 135 Cal.Rptr. 41, 43, 557 P.2d 473, 475 (1976) ("[T]he statutory notice and hearing provisions govern only ordinances enacted by city council action and do not limit the power of municipal electors, reserved to them by the state Constitution, to enact legislation by initiative."); *Margolis v. District Court,* 638 P.2d 297 (Colo.1981) (rezoning is legislative in character and subject to referendum and initiative); *Meridian Development Co. v. Edison,* 91 N.J.Super. 310, 220 A.2d 121 (1966) (voters are entitled to amend zoning ordinance by initiative); *Storegard v. Board of Elections,* 22 Ohio Misc. 5, 50 Ohio Ops.2d 228, 255 N.E.2d 880 (1969) (initiative is proper device to repeal zoning ordinance); *League of Women Voters v. Washington County,* 56 Or.App. 217, 641 P.2d 608 (1982) (land use ordinance enacted by initiative became part of county's comprehensive land use plan and is not subject to review).[6]

█ Although we recognize that some jurisdictions permit zoning by initiative, we are not persuaded that the so-called "modern trend" is based on sound constitutional

governing body of a county pursuant to A.R.S. § 11–801 *et seq.*

**5.** The county requirement for notice and hearing is contained within A.R.S. § 11–829.

**6.** In support of the "modern trend," intervenor also cites some cases that hold that changes in a comprehensive zoning plan may be subject to referendum. *See, e.g., Yost v. Thomas,* 36 Cal.3d 561, 205 Cal.Rptr. 801, 685 P.2d 1152 (1984); *County of Kauai v. Pacific Standard Life*

*Ins.,* 65 Hawaii 318, 653 P.2d 766 (1982), *app. dismd. Pacific Standard Life Ins. v. Committee to Save Nukolii,* 460 U.S. 1077, 103 S.Ct. 1762, 76 L.Ed.2d 338 (1983). We find these cases inapplicable to the case at bar because we already adhere to this position. *See Queen Creek Land and Cattle Corp. v. Yavapai County Board of Supervisors,* 108 Ariz. 449, 452, 501 P.2d 391, 394 (1972) ("[referendum] does not change zoning as an initiative would, and the notice and hearing process has been accomplished prior to the referendum.").

**350**

principles. The *Scottsdale* case is in harmony with the law in the vast majority of other jurisdictions, which prohibits zoning by initiative. *E.g., Andover Development Corp. v. City of New Smyrna Beach,* 328 So.2d 231 (Fla.App.1976), *cert. denied,* 341 So.2d 290 (Fla.1976); *Gumprecht v. City of Coeur D'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983); *State v. Donahue,* 368 S.W.2d 432 (Mo.1963); *Forman v. Eagle Thrifty Drugs & Markets,* 89 Nev. 533, 516 P.2d 1234 (1973); *San Pedro North Ltd. v. City of San Antonio,* 562 S.W.2d 260 (Tex.Civ. App.1978), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1973); *Dewey v. Doxey–Layton Realty Co.,* 3 Utah 2d 1, 277 P.2d 805 (1954); *Lince v. City of Bremerton,* 25 Wash.App. 309, 607 P.2d 329 (1980). Furthermore, governmental units, like the city and the county, do not inherently have the zoning power. The power to zone is part of the police power and may be delegated by the State, but the subordinate governmental unit has no greater power than that which is delegated. As noted earlier, the delegation of the power to zone may also include the process that must be followed to achieve the zoning. As *Scottsdale* points out, the process for establishing and changing zoning has been outlined in considerable detail by the legislature. *See* A.R.S. § 9–461, *et seq;* A.R.S. § 11–801 *et seq. See also* Annotation, *Adoption of Zoning Ordinance or Amendment Thereto Through Initiative Process,* 72 A.L.R.3d 991, 995 (1976) (where "the legislature [has] dealt specially and in considerable detail with the subject of zoning and the procedures to be followed in adopting a zoning measure, its enactments in that regard should be deemed controlling over more general constitutional, statutory, or charter provisions reserving or granting the power of the initiative to the electors of municipalities.") We continue to adhere to the view that citizens may not create, amend or expand city or county zoning ordinances by initiative.

Under this court's decision in *Scottsdale,* the trial court should have enjoined the city and its officers from proceeding with the election on the proposed initiative; therefore, the judgment of the superior court is reversed, and the matter is remanded to superior court for entry of judgment granting the relief sought by appellants. The judgment dismissing the action against the county is also reversed, and the matter is remanded for reinstatement of the claim against the county and for entry of judgment granting the relief sought by appellants against the county and its officers.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

FELDMAN, V.C.J., recused himself and did not participate in the determination of this matter.