949 P.2d 502

Brian WINKLE, an individual; Frank Beauvais, an individual, Plaintiffs/Appellees,

v.

CITY OF TUCSON; Kathleen Detrick, City Clerk; George Miller, Mayor of the City of Tucson; Jose J. Ibarra, Member of the Tucson City Council; Janet Marcus, Member of the Tucson City Council; Michael J. Crawford, Member of the Tucson City Council; Shirley C. Scott, Member of the Tucson City Council; Steve Leal, Member of the Tucson City Council; and Molly McKasson, Member of the Tucson City Council, Defendants/Appellees,

and

Carolyn A. TROWBRIDGE; Jeffrey A. Imig; and Maritza J. Broce, Defendants as Real Parties in Interest/Appellants.

No. CV–97–0374–AP.

Supreme Court of Arizona, En Banc.

Dec. 4, 1997.

**414**

Fennemore Craig, P.C. by Andrew M. Federhar, Theresa Dwyer, Amy A. Anderson, Tucson, for Plaintiffs/Appellees.

Thomas J. Berning, Tucson City Attorney by Dennis P. McLaughlin, Bradford C. Detrick, Tucson, for Defendants/Appellees.

Southern Arizona People's Law Center by Paul J. Gattone, Tucson, for Defendants as Real Parties in Interest/Appellants.

## OPINION

FELDMAN, Justice.

This is an appeal from an order enjoining the City of Tucson and its Clerk from placing an initiative on the November 1997 ballot. We review the trial court's ruling pursuant to our appellate jurisdiction under A.R.S. § 19-122(C). On September 13, 1997, after considering the submitted briefs, we vacated the trial court's order and advised the Clerk that the initiative could be placed on the general election ballot. We further indicated that this opinion would follow.

## FACTS AND PROCEDURAL HISTORY

Signed on April 4, 1997, A.R.S. § 23-362 declared minimum wage a matter of statewide concern and forbade any governmental subdivision from establishing a minimum wage in excess of the federal minimum wage. Some six months before the statute was enacted, interested parties had already commenced a signature drive for the "Tucson Livable Wage Initiative." If passed, the initiative would have required Tucson employers to pay workers a minimum wage of $7.00 per hour effective January 1, 1998. On August 1, 1997, the City Clerk certified to the Mayor and City Council that the initiative satisfied all state and city procedural requirements and was therefore a qualified proposal. Thus, on August 4, the City Council placed the initiative on the ballot. On August 11, initiative opponents Brian Winkle and Frank Beauvais ("Appellees") filed a complaint in Pima County Superior Court alleging that the proposed initiative contained both procedural and substantive defects. The trial judge found no procedural defect but enjoined the initiative as substantively preempted by A.R.S. § 23-362. The initiative proponents appealed, asking this court to consider one issue: Whether a court can enjoin a proposed initiative on the basis that

its content, if passed, may be preempted by state law.

The fundamental question is whether the judicial power granted by the Arizona Constitution permits our courts to examine the substance of an initiative and remove it from the election ballot. Initiative opponents contend that even before its passage, the initiative is ripe for preemption review. Concluding our constitution forbids this type of judicial interference with the people's power to legislate, we hold that the initiative is not ripe for review.

## DISCUSSION

### A. Separation of powers

Arizona's constitution ensures the proper distribution of power among our three separate and distinct branches of government. *Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 586, 886 P.2d 1338, 1342 (1994). The Distribution of Powers clause of Article III reads, "The powers of the government of the state of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial ... and no one of such departments shall exercise the powers properly belonging to either of the others."

 "This court has carefully observed these dividing lines, particularly in cases where we are asked to prohibit or require legislative action." *Fairness & Accountability,* 180 Ariz. at 586, 886 P.2d at 1342. We have long held that Article III requires the judiciary to refrain from meddling in the workings of the legislative process. *See Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952); *City of Phoenix v. Superior Court,* 65 Ariz. 139, 175 P.2d 811 (1946). Part of this legislative process is the people's power to create legislation through initiative. Ariz. Const. art. IV, pt. 1, § 1(8); *Allen v. State,* 14 Ariz. 458, 467, 130 P. 1114, 1118 (1913) ("[t]he people did not commit to the legislature the whole law-making power of the state, but they especially reserved in themselves the power to initiate and defeat legislation by their votes.").

 Only two years after statehood, this court held that determining an initiative's validity before the voters had an opportunity to vote on it would

> be tantamount to claiming the power of life and death over every initiated measure by the people. It would *limit the right of the people to propose only valid laws,* whereas the other lawmaking body, the Legislature, would go untrammeled as to the legal soundness of its measures.

*State v. Osborn,* 16 Ariz. 247, 249–50, 143 P. 117, 118 (1914) (emphasis added). The separation of powers doctrine dictates our deference to legislative functions. "The legislative power of the people is as great as that of the legislature." *Tilson v. Mofford,* 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987) (citing Ariz. Const. art XXII, § 14). Voter initiatives, part and parcel of the legislative process, receive the same judicial deference as proposals before the state legislature—courts are powerless to determine their substantive validity unless and until they are adopted.

 As a true reflection of democratic principles, Arizona citizens are not precluded from legislating on any issue, even though the legislation might conflict with the Arizona Constitution or state law. *Iman v. Bolin,* 98 Ariz. 358, 364–65, 404 P.2d 705, 709 (1965). The constitutionality of such a measure will only be tested *after* it becomes law. *Id.* Thus, so long as it is uncertain whether an initiative will become law, this court will not intervene in a wholly legislative process.

### B. Judicial review

 Appellees attempted to derail an initiative proposal prior to public vote. Because the election had not yet occurred, ripeness was at issue. *Cf. Tilson,* 153 Ariz. at 470, 737 P.2d at 1369 (unless measure is procedurally defective on its face, we will not pass on its validity before electorate votes on it). The ripeness doctrine prevents a court from rendering a premature judgment or opinion on a situation that may never occur. *Arizona Downs v. Turf Paradise, Inc.,* 140 Ariz. 438, 444, 682 P.2d 443, 449 (App.1984). For this reason, courts do not address matters of substantive interpretation of initiative proposals prior to election.

Preelection review of the substantive validity of an initiative may arguably be more efficient, but we have considered and rejected this possibility. In *Williams v. Parrack,* this court held that, "[w]hile it may entail considerable expense to submit the ordinance to a vote of the people, this court has not the authority to pass upon the validity or invalidity of said ordinance before its enactment into law." 83 Ariz. 227, 231, 319 P.2d 989, 991 (1957).

■ Prior to passage, this court will consider only procedural defects in form that bear directly on the integrity of the election process. The statute governing initiatives requires only that a petition be legally sufficient to receive constitutional protection and be placed on the ballot. *See* A.R.S. § 19-122(C). We first construed this requirement in *Osborn,* in which we held that an initiative was legally sufficient so long as it was not fraudulent and complied with the form and signature requirements. 16 Ariz. at 250, 143 P. at 118. Under *Osborn,* the text of an initiative need not be substantively valid for it to be cloaked with constitutional protection. *Id.* As this court stated in *Williams,* "[i]t is only in cases where the initiative petition is *defective in form . . . where the procedure prescribed has not been followed* that the court has authority to intervene and enjoin its enactment." 83 Ariz. at 231, 319 P.2d at 991 (emphasis added).

### 1. Procedural defects in form

■ This court has recognized only two kinds of procedural defects in intiative petitions. The first is a failure to structurally comply with A.R.S. §§ 19-101 to 19-144. For example, the petition could lack the requisite number of signatures or fail to comply with publication requirements. *See Fairness & Accountability,* 180 Ariz. at 587-88, 886 P.2d at 1343-44 (discussing the necessity of compliance with publication requirements); *Kerby v. Griffin,* 48 Ariz. 434, 62 P.2d 1131

(1936) (enjoining election for failure to follow statutorily required publishing procedure that created procedural defect).

■ The second arises when text of the initiative does not comprise legislation . because it fails to enact anything. *Saggio v. Connelly,* 147 Ariz. 240, 241, 709 P.2d 874, 875 (1985). For an initiative to form legislation, its text must propose "a definite, specific act or resolution" that is more than an expression of "general principles." *Id.*[1]

The trial judge found no procedural defects. Nor do Appellees challenge the form of the initiative. *See* Ariz. Const. art. XII, § 1; A.R.S. §§ 19-101 to 19-144. Additionally, Appellees do not contend that the proposal does not constitute legislation; in fact, it is precisely because of its potential legislative effect that Appellees seek to block it. At this point, any inquiry beyond procedural defect would prematurely examine the measure's substantive validity.

### 2. State law preemption of a proposed initiative

■ Appellees urge us to undertake a preelection preemption analysis and disqualify the initiative. Preemption requires a two-step analysis: 1) whether the subject matter is one of statewide concern, and 2) whether the state legislation has appropriated the field. *See State v. Mercurio,* 153 Ariz. 336, 340, 736 P.2d 819, 823 (App.1987). The first step essentially asks us to examine the substance of the initiative to determine whether it is a matter of statewide concern. However, the substantive text of an initiative is part of the legislative process and not subject to review before its adoption. *See Fairness & Accountability,* 180 Ariz. at 587, 886 P.2d at 1343.

■ To be preempted, a municipal ordinance must actually conflict with governing state law. *See City of Prescott v. Town of*

---

1. This court held in *Saggio* that the text of the initiative to dissolve Apache Junction did not "indicate whether it is an ordinance enacting new legislation, an amendment to an existing ordinance, or the repeal of an existing ordinance. . . . The proposed measure is more in the nature of a demand for a public opinion poll by

election. The form of the measure, however, is not legislation. It does not enact anything." 147 Ariz. at 241, 709 P.2d at 875. While the court acknowledged that the initiative if passed may be preempted, the court did not disqualify it on that ground. *Id.*

*Chino Valley*, 163 Ariz. 608, 616, 790 P.2d 263, 271 (App.1989), *vacated in part on other grounds*, 166 Ariz. 480, 803 P.2d 891 (1990); *Mercurio*, 153 Ariz. at 340, 736 P.2d at 823. To make such a determination, this court would have to examine the validity and substance of the governing state statute, A.R.S. § 23–362, to determine if the subject matter is of local or statewide concern. *See Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 559, 578 P.2d 985, 988 (1978); *Clayton v. State*, 38 Ariz. 135, 297 P. 1037 (1931) (court must determine whether subject of legislation is of state or local interest; if it is of local interest, state and city may legislate on same subject). Thus, we would have to examine whether A.R.S. § 23–362 can, by its pronouncement, completely occupy the minimum wage field.[2] Again, however, this court cannot undertake review of any substantive legislation before an actual conflict exists. Before enactment, future actual conflict is only a possibility. Until an actual conflict ripens, we refrain from interfering.

Appellees cite two zoning cases from this court to support preelection review of an initiative. *See City of Scottsdale v. Superior Court*, 103 Ariz. 204, 439 P.2d 290 (1968); *Transamerica Title Ins. Co. v. City of Tucson*, 157 Ariz. 346, 757 P.2d 1055 (1988). In both cases, we removed the proposed initiatives from the ballot before election. However, these cases represent a historical anomaly specific to zoning and designed to protect the due process rights of private property owners. Because these cases might be read to support preelection review of other types of initiatives, we believe some clarification is in order.

The State Zoning Enabling Act expressly delegates zoning powers to other levels of government, including the governing body of an incorporated city. A.R.S. §§ 9–461 to 9–463.06, 11–801 to 11–874. Zoning ordinances cannot be passed by initiative without circumventing the constitutionally required notice and hearing. *See City of Scottsdale*, 103 Ariz. at 208, 439 P.2d at 294; *Transamerica Title Ins.*, 157 Ariz. at 349, 757 P.2d at 1058. To protect property owners' constitutional rights within the comprehensive legislative scheme governing zoning, this court has held that initiatives cannot be used to legislate zoning. Thus, we do not review the substantive validity of any proposed zoning ordinance but only prohibit altogether the use of initiative to enact zoning laws.[3]

Additionally, Appellees cite *Robertson v. Graziano*, 189 Ariz. 350, 942 P.2d 1182 (App. 1997), to support preelection judicial review. In *Robertson*, the court of appeals held that a proposed budgetary initiative could not be enjoined from the ballot. *Robertson* cited *Saggio* as authority supporting the principle that a "petition may be defective in form if it attempts to legislate on a matter not subject to the people's legislative power." *Id.* at 352, 942 P.2d at 1184. As previously noted, however, in *Saggio* we examined the initiative's text only to determine whether it comprised legislation. *Saggio*, 147 Ariz. at 241, 709 P.2d at 875. We did not examine the measure's substantive validity or try to determine whether its text was constitutional or preempted by existing state law. *Saggio*, 147 Ariz. 240, 709 P.2d 874. Our limited examination follows long standing precedent that both the legislature and the electorate may enact laws, which may be challenged and held invalid only after voter approval. *See Iman*, 98 Ariz. at 364–65, 404 P.2d at 709; *Osborn*, 16 Ariz. at 249, 143 P. at 118. We examine an intiative to determine whether it belongs on the ballot (whether it is proposed legislation), not whether, if adopted, it will be valid or constitutional.

---

2. A.R.S. § 23–362 entitled "Minimum wage; prohibition" reads:

> A. The legislature declares that the establishment of a uniform minimum wage is a matter of statewide concern.
>
> B. No political subdivision of this state may establish, mandate or otherwise require a minimum wage that exceeds the federal minimum wage prescribed in 29 United States Code § 206.

3. While the voters may not initiate zoning, they still can call a referendum election on an ordinance, as the hearing to protect due process rights of property owners has already occurred at the pre-approval stage. *Queen Creek Land & Cattle v. Yavapai County Bd. of Supervisors*, 108 Ariz. 449, 501 P.2d 391 (1972). Thus, while due process requirements for zoning laws prevent use of the initiative, the ultimate power of referendum still lies in the hands of the electorate.

Thus, neither *Saggio* nor *Robertson* permits a preemption analysis to determine whether the law will be valid if it passes. *Saggio* permits only procedural scrutiny of an initiative's text to determine whether it is entitled to protection as legislation. When a proposed initiative comprises legislation, it is improper to subject it to substantive analysis before enactment.

### C. Policy concerns

Finally, policy considerations support judicial restraint. As a jurisprudential matter, this court has a strong interest in promoting judicial economy. Review of a proposal that may or may not become law amounts to no more than an advisory opinion. Once committed to this practice, the judiciary would be inundated with unnecessary preelection challenges.[4]

Second, this court should not create an impediment to the exercise of one of our state government's bedrock institutions. Grassroots democracy, exercised by initiative, is not always an efficient process; however, there are clear benefits to allowing the public to vote on an initiative, even though its validity may be questioned if it passes. In a democracy, the process itself is often as valuable as the result. A vote to enact legislation expresses more than a current whim of the people; it expresses the voters' preferred rule of governance. Ultimately, preemption may prevent enforcement of a law, but it cannot forbid the voters from voicing their views of a legislative proposal via the initiative process. If this process is deemed a waste of taxpayers' time or money, then the laws governing initiatives may be altered by legislative process, not by judicial decision.

### CONCLUSION

Challenges to any initiative based on its substance must wait until enactment. If and when an initiative passes, a court may then determine whether its contents are preempted by A.R.S. § 23–362 or rendered invalid by

any state law or constitutional clause then existing.

ZLAKET, C.J., JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.

---

4. In the present case, for example, the proposal was defeated in the November 1997 election.