SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| LEAGUE OF ARIZONA CITIES AND TOWNS; ARIZONA PLANNING ASSOCIATION, a nonprofit corporation; JOSEPH C. DONALDSON, a qualified elector; THOMAS J. HESSLER, a qualified elector; JOHN KEEGAN, a qualified elector; and LAWRENCE K. NELSON, a qualified elector, | ) Arizona Supreme Court ) No. CV-06-0286-AP/EL ) ) Maricopa County ) Superior Court ) No. CV2006-011432 ) ) ) |
| Plaintiffs/Appellants, | ) ) |
| v. | ) **O P I N I O N** ) ) |
| JANICE K. BREWER, in her official capacity as Secretary of State for the State of Arizona; and THE BOARDS OF SUPERVISORS OF APACHE, COCHISE, COCONINO, GILA, GRAHAM, GREENLEE, LA PAZ, MARICOPA, MOHAVE, NAVAJO, PIMA, PINAL, SANTA CRUZ, YAVAPAI, and YUMA COUNTIES, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants/Appellees, and | ) ) ) |
| ARIZONA HOMEOWNERS PROTECTION EFFORT, an unincorporated association, | ) ) ) ) |
| Real Party in Interest. | ) ) |

Appeal from the Superior Court in Maricopa County
The Honorable Paul J. McMurdie, Judge

**AFFIRMED IN PART; VACATED IN PART**
_____

GAMMAGE & BURNHAM PLLC                                    Phoenix
      By    Lisa T. Hauser
            Grady Gammage, Jr.
            Michella Abner
Attorneys for League of Arizona Cities and Towns,
Arizona Planning Association, Joseph C. Donaldson,
Thomas J. Hessler, John Keegan, and Lawrence K. Nelson

TERRI SKLADANY, ACTING ARIZONA ATTORNEY GENERAL          Phoenix
      By    Emma L. Mamaluy, Assistant Attorney General
            Diana L. Varela, Assistant Attorney General
Attorneys for Janice K. Brewer, Secretary of State
for the State of Arizona

MEAGHER & GEER PLLP                                       Scottsdale
      By    Gary L. Lassen
            James M. Marovich
            Aaron S. Peterson
Attorneys for Arizona Homeowners Protection Effort

TERENCE C. HANCE, COCONINO COUNTY ATTORNEY               Flagstaff
Attorney for Amicus Curiae County Supervisors
Association of Arizona

_____


**B E R C H**, Vice Chief Justice

¶1        Appellant League of Arizona Cities and Towns sued to enjoin the Secretary of State from placing Proposition 207, the Private Property Rights Protection Act, on the 2006 general election ballot.  The superior court held that pre-election review of Proposition 207 by the courts is improper.  On August 31, 2006, this Court issued an order affirming the superior court's judgment and allowing Proposition 207 to remain on the ballot.  This opinion explains our reasoning.  We have jurisdiction in this case pursuant to Article 6, Section 5(3) of

the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 19-122(C) (2002).

## I.   FACTS AND PROCEDURAL BACKGROUND

¶2      The Arizona Homeowners Protection Effort ("Homeowners") proposed the initiative known as the Private Property Rights Protection Act to limit the use of eminent domain and to expand the definition of regulatory takings. Homeowners filed with the Secretary of State sufficient initiative petition signatures to qualify Proposition 207 for the ballot.

¶3      On July 31, 2006, the League challenged Proposition 207 in the superior court pursuant to A.R.S. § 19-122(C) and (D).   The League asserted that Proposition 207 violates the Arizona Constitution's "Revenue Source Rule" by failing to state the source of revenue to pay the "immediate and future costs of the proposal," rendering the initiative legally insufficient and warranting pre-election review by the courts and removal of the initiative from the ballot.   *See* Ariz. Const. art. 9, § 23 ("Revenue Source Rule" or "§ 23").

¶4      The superior court dismissed the League's challenge, holding that Revenue Source Rule violations cannot be reviewed before a proposition is enacted into law.   The League timely appealed pursuant to A.R.S. § 19-122(C).

## II. DISCUSSION

¶5       Proposition 207 seeks to prohibit the use of eminent domain by the state and its political subdivisions to acquire land for non-public uses.  *See* Ariz. Sec'y of State, 2006 General Election Ballot Measures, Proposition 207, § 12-1131, *available at* http://www.azsos.gov/election/2006/general/ballot measures.htm (follow "Ballot Number 207" hyperlink).  It also proposes to expand the definition of regulatory takings; if passed, it would require the state to pay just compensation to landowners for decreases in private property values caused by state land use laws.  *See id.* § 12-1134(A).[1]  The proposition defines the compensation that must be paid as "the sum of money that is equal to the reduction in fair market value of the property resulting from the enactment of the land use law."  *Id.* § 12-1136(2).

¶6       The League argues that Proposition 207's failure to specify how the state will pay any required compensation

---

[1]     Proposition 207, § 12-1134(A), provides as follows:

If the existing rights to use, divide, sell or possess private real property are reduced by the enactment or applicability of any land use law enacted after the date the property is transferred to the owner and such action reduces the fair market value of the property the owner is entitled to just compensation from this state or the political subdivision of this state that enacted the land use law.

violates the Revenue Source Rule, Ariz. Const. art. 9, § 23,[2] and that we therefore should remove the initiative from the ballot. Section (A) of the Revenue Source Rule requires an initiative that proposes a mandatory expenditure of state revenues to identify an independent source of revenue that will cover the immediate and future costs of the initiative. *Id.* If the identified revenue source cannot sufficiently fund an initiative in any fiscal year, the legislature may limit the funding of the initiative to the identified revenue source. *Id.* § 23(B). The Revenue Source Rule ensures that state general fund revenues are

---

[2] The Revenue Source Rule states:

> A. An initiative or referendum measure that proposes a mandatory expenditure of state revenues for any purpose, establishes a fund for any specific purpose or allocates funding for any specific purpose must also provide for an increased source of revenues sufficient to cover the entire immediate and future costs of the proposal. The increased revenues may not be derived from the state general fund or reduce or cause a reduction in general fund revenues.
>
> B. If the identified revenue source provided pursuant to subsection [A] in any fiscal year fails to fund the entire mandated expenditure for that fiscal year, the legislature may reduce the expenditure of state revenues for that purpose in that fiscal year to the amount of funding supplied by the identified revenue source.

Ariz. Const. art. 9, § 23. The Revenue Source Rule applies only to expenditures from the general fund required by state land use laws. It does not apply to expenditures required by local land use laws.

- 5 -

not used to fund ballot initiatives that require state expenditures.

¶7        The question before us is whether a violation of the Revenue Source Rule renders an initiative legally insufficient, thereby allowing pre-election review and removal of the proposition from the ballot, or whether such a challenge must await passage of the proposition.  This issue poses a question of law that we review de novo.  *See Clean Elections Inst., Inc. v. Brewer*, 209 Ariz. 241, 243, ¶ 2, 99 P.3d 570, 572 (2004).

## A.    Pre-election Review

### 1.    Separation of Powers

¶8        The courts are reluctant to intrude on the prerogative of the people or the legislature to proffer legislation.  The Separation of Powers Clause of the Arizona Constitution expressly prohibits one branch of government from intruding into or "exercis[ing] the powers properly belonging to" another branch.  Ariz. Const. art. 3.  We have consistently interpreted this clause to require the judiciary to refrain from interfering with the legislative process.  *See Winkle v. City of Tucson*, 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997); *Adams v. Bolin*, 74 Ariz. 269, 285, 247 P.2d 617, 628 (1952); *State v. Osborn*, 16 Ariz. 247, 249-52, 143 P. 117, 118-19 (1914).

¶9        A fundamental component of the legislative process in Arizona is the right of the people to offer legislation through

- 6 -

the initiative. *See* Ariz. Const. art. 4, pt. 1, § 1; *Allen v. State*, 14 Ariz. 458, 467, 130 P. 1114, 1118 (1913). This "legislative power of the people is as great as that of the legislature." *Tilson v. Mofford*, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987) (citing Article 22, Section 14 of the Arizona Constitution). When the people exercise their right to legislate by initiative, they therefore enjoy the same protection from judicial interference the legislature is afforded. *Queen Creek Land & Cattle Corp. v. Yavapai County Bd. of Supers.*, 108 Ariz. 449, 451, 501 P.2d 391, 393 (1972).

¶10     Before a bill passes, the courts generally may not interfere with the legislative process. *See Osborn*, 16 Ariz. at 249, 143 P. at 118. The legislature may thus introduce, consider, and pass any measure. And just as the courts may not predetermine the substantive validity of the legislature's measures, so too must they refrain from predetermining the substantive validity of the people's initiatives, even if the "legislation might conflict with the Arizona Constitution or state law." *Winkle*, 190 Ariz. at 415, 949 P.2d at 504. Noting the importance of preserving the parity between the legislature's and the people's right to propose laws, this Court has observed that

> determining an initiative's validity before the voters had an opportunity to vote on it would "be tantamount to claiming the power of life and death over every

initiated measure by the people.  It would *limit the right of the people to propose only valid laws*, whereas the other lawmaking body, the Legislature, would go untrammeled as to the legal soundness of its measures."

*Id.* (quoting *Osborn*, 16 Ariz. at 249-50, 143 P. at 118); *see also Osborn*, 16 Ariz. at 250, 143 P. at 118; *cf.* Ariz. Const. art. 4, pt. 1, § 1(6) (protecting laws initiated by the people from legislative repeal or amendment).  Courts will thus review the validity of an initiated measure only after the measure becomes law.  *Osborn*, 16 Ariz. at 251, 143 P. at 118-19.

¶11     We may, however, review an initiative before passage if authorized by law to do so.  *See Adams*, 74 Ariz. at 285, 247 P.2d at 628; *Kerby v. Griffin*, 48 Ariz. 434, 444, 62 P.2d 1131, 1135 (1936).  Authorization has been expressly given to the judiciary to enjoin the placement of an initiative petition on the ballot if it is "not legally sufficient."  A.R.S. § 19-122(C).

¶12     We first interpreted the term "legally sufficient" almost a century ago, describing an initiative as legally sufficient if it complies with form and signature requirements and is not fraudulent.  *Osborn*, 16 Ariz. at 250, 143 P. at 118. A court may therefore enjoin an initiative as legally insufficient only if it is defective in form, does not receive the number of valid signatures required by the constitution, or fails to follow the prescribed procedures.  *Williams v. Parrack*,

- 8 -

83 Ariz. 227, 231, 319 P.2d 989, 991 (1957); *see also Iman v. Bolin*, 98 Ariz. 358, 365, 404 P.2d 705, 709 (1965).

¶13    In *Winkle*, we reiterated these holdings and concluded that only two kinds of procedural defects in form generally warrant pre-election review under A.R.S. § 19-122(C). 190 Ariz. at 416, 949 P.2d at 505.[3]  First, we will conduct a pre-election review to determine whether an initiative complies with the structural requirements of A.R.S. §§ 19-101 to -143 (2002 & Supp. 2005), such as the publication or signature requirements. *See, e.g., Kerby*, 48 Ariz. at 444-46, 62 P.2d at 1135-36. Second, we will review to determine whether an initiative in fact constitutes legislation. *Saggio v. Connelly*, 147 Ariz. 240, 241, 709 P.2d 874, 875 (1985).  In sum, we review before

---

[3]    We have also reviewed initiatives before an election in two other special situations not applicable here.  First, we have conducted pre-election review to determine whether initiatives violate the Separate Amendment Rule of Article 21, Section 1 of the Arizona Constitution.  *See, e.g., Tilson*, 153 Ariz. at 471, 737 P.2d at 1370.  The Separate Amendment Rule concerns only constitutional amendments, not ordinary legislation, thereby reducing traditional separation of powers concerns. Furthermore, Article 21, Section 1, sets forth the manner in which proposed constitutional amendments "shall be submitted" to the vote of the people, implying that pre-election review is appropriate.

Second, we have reviewed initiatives to determine if they legislate zoning.  *See Transamerica Title Ins. Co. v. City of Tucson*, 157 Ariz. 346, 348-49, 757 P.2d 1055, 1057-58 (1988); *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 207, 439 P.2d 290, 293 (1968).  These cases "represent a historical anomaly specific to zoning and designed to protect the due process rights of private property owners." *Winkle*, 190 Ariz. at 417, 949 P.2d at 506.

election only to see whether an initiative "belongs on the ballot . . . , not whether, if adopted, it will be valid or constitutional." *Winkle*, 190 Ariz. at 417, 949 P.2d at 506.

¶14       Against this historical background, we must determine whether a violation of the Revenue Source Rule is the type of violation reviewable before election.

    2.    Revenue Source Rule Violations

¶15       The League does not allege that Proposition 207 violates the rules of form in A.R.S. §§ 19-101 to -143 that traditionally have been subject to pre-election review or that, if passed, the initiative will not constitute legislation. Instead, the League asks this Court to expand the categories of pre-election review by recognizing violations of the Revenue Source Rule as a third type of defect that may be reviewed before an election.  We decline to do so.

¶16       The defects in form that this Court will review before an election are those that involve bringing an initiative to the ballot because those defects "bear directly on the integrity of the election process." *Winkle*, 190 Ariz. at 416, 949 P.2d at 505.  When an initiative has been properly brought to the ballot, we will not look into its substantive validity before the people have approved it. *Id.* at 417, 949 P.2d at 506.

¶17       The Revenue Source Rule does not set forth a rule regarding the form of ballot initiatives or the manner in which

initiatives are brought to the ballot. *See Kerby*, 48 Ariz. at 444, 62 P.2d at 1135. Unlike the technical requirements in A.R.S. §§ 19-101 to -143, the Revenue Source Rule does not involve the circumstances under which the people are permitted to vote. Instead, it governs the substantive issue of ballot initiative funding by protecting the state general fund from unfunded ballot initiative mandates.

¶18 The League nonetheless argues that the Revenue Source Rule regulates form and therefore is subject to challenge before election because it requires an initiative to include some information regarding the initiative's funding source. We disagree that providing information to voters is the focus of the rule or that any information provided is merely a matter of form. The Revenue Source Rule was not intended simply to provide voters with information no matter how potentially inaccurate or misleading, but rather was designed to ensure a source of funding to protect the state's general fund. As such, it constitutes a matter of substance rather than form.

¶19 The County Supervisors Association, writing as amicus curiae, joins the League in suggesting that the language "measure that proposes," found in Article 9, Section 23(A), suggests pre-election review. We are not persuaded. The phrase describes the subject of the rule: proposed initiatives and referenda. The constitutional language does not manifest an

intent that courts conduct pre-election review of all initiatives and referenda for compliance with the Revenue Source Rule. To the contrary, Article 9, Section 23(B) expressly sets forth a post-enactment remedy: The legislature may reduce the expenditure of state revenues to fund the initiative for the fiscal year to the amount produced by the funding source identified in the initiative. This language suggests that pre-election review was not intended.

¶20 In light of the strong language this Court has used to interpret the Separation of Powers Clause, we must exercise restraint in reviewing initiatives before election in order to respect the legislative process. In cases such as this, in which it is doubtful that pre-election review was intended, restraint is particularly appropriate.

### 3. Prudential Concerns

¶21 Restraint is also appropriate for several prudential reasons. First, pre-election review requires the courts to issue what may in the end be advisory opinions. It therefore may unnecessarily consume judicial resources. *Winkle*, 190 Ariz. at 418, 949 P.2d at 507. This occurs because we are asked to opine on the validity or constitutionality of laws that may never be approved by the voters. *Id.* (noting that if the courts offered advisory opinions routinely in election cases, "the judiciary would be inundated with unnecessary preelection

challenges").

¶22     Second, pre-election review of ballot initiatives necessarily occurs in an expedited manner, often with only limited briefing by the parties and without a court of appeals decision or a full record.  These concerns are exacerbated in cases such as this, in which the constitutional provision at issue has never been the subject of judicial interpretation.

¶23     Third, pre-election review in this case would require us to remove an entire initiative from the ballot, even though only one provision of Proposition 207 has been challenged as potentially violating the Revenue Source Rule.  If the legislature had passed a law similar to the Private Property Rights Protection Act, we could consider severing only the portion that violated the Revenue Source Rule.

¶24     Finally, because pre-election review may chill the fundamental right of the people to legislate, it should be used sparingly.  As we observed in *Winkle*:

> Grassroots democracy, exercised by initiative, is not always an efficient process; however, there are clear benefits to allowing the public to vote on an initiative, even though its validity may be questioned if it passes.  In a democracy, the process itself is often as valuable as the result.  A vote to enact legislation expresses more than a current whim of the people; it expresses the voters' preferred rule of governance.

*Id*.  When the people set forth the circumstances under which they will exercise their vote, and those circumstances are met,

- 13 -

we will not interfere with an initiative by examining its substance before the measure passes.

## B.    Substantive Review

¶25      Although we do not now resolve this issue, we vacate the superior court's determination that Proposition 207 violates the Revenue Source Rule.  The court should not have addressed the issue because doing so required a pre-election substantive review of the legislation, violating the Separation of Powers Clause of the Arizona Constitution.

¶26      Moreover, on this limited record we cannot say whether Proposition 207 violates Article 9, Section 23 because the initiative may not require "a mandatory expenditure of state revenues," the trigger for application of the Revenue Source Rule.  If Proposition 207 passes, § 12-1134 will have no financial impact on the state general fund unless the legislature enacts a land use law that results in a regulatory taking.  In the zoning arena, many if not most laws are passed by cities and counties rather than by the state and thus would affect local rather than state revenues.  Any expenditure of state general funds to pay just compensation thus depends on the legislature's actions.

¶27      We need not resolve these questions at this time because "this court cannot undertake review of any substantive legislation before an actual conflict exists."  *Winkle*, 190

- 14 -

Ariz. at 417, 949 P.2d at 506.  If Proposition 207 is approved by the voters and the legislature enacts a land use law that results in a regulatory taking under § 12-1134, we can then — on a full record and in the context of concrete facts — ascertain whether there has been a violation of the Revenue Source Rule.

### III.  CONCLUSION

¶28      The people have the right to approve or disapprove any initiative that has been properly placed on the ballot.  With limited exceptions not applicable here, the judiciary may interfere in the initiative process only if an initiative does not comply with the formal requirements for bringing an initiative to the ballot.  The Revenue Source Rule does not set forth any requirements for bringing a measure to the ballot, and the League does not argue that Proposition 207 contains any of the defects in form identified in *Winkle* as warranting pre-election review.

¶29      We therefore affirm the superior court's determination that pre-election review of Proposition 207 is improper, but vacate the superior court's determination that Proposition 207 violates Article 9, Section 23 of the Arizona Constitution.

_____
Rebecca White Berch,
Vice Chief Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice